Hillsborough-northern judicial district
No. 2009-770

THE STATE OF NEW HAMPSHIRE

v.

DANIEL J. LETENDRE

Argued: October 14, 2010
Opinion Issued: January 13, 2011

*Michael A. Delaney,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief and orally), for the State.

*Pamela E. Phelan,* assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. Following a jury trial, the defendant, Daniel J. Letendre, was convicted of two counts of aggravated felonious sexual assault and two counts of simple assault. *See* RSA 631:2-a (2007); RSA 632-A:2 (2007). On appeal, he argues that the Trial Court (*Abramson,* J.) erroneously: (1) admitted statements the victim made concerning the defendant; and (2) permitted the victim's guardian ad litem to sit with her during her testimony. We affirm.

The jury could have found the following facts. The defendant and the ten-year-old victim, E.M., lived in the same apartment building. On March 18, 2008, E.M.'s parents went outside to investigate a loud noise, while E.M. remained in the building. She testified that during this time the defendant sexually assaulted her. While outside, E.M.'s parents observed her and the defendant descending a staircase that was visible from the outside. Both parents testified that E.M. was shaking and looked "like something happened," or as "if she had done something."

E.M.'s mother then questioned her privately, and E.M.'s father contacted the police. E.M. was subsequently taken to the hospital by ambulance where she made statements to a sexual assault nurse examiner implicating the defendant.

The State also alleged two other encounters between E.M. and the defendant, which occurred between February 1 and March 17, 2008. The State alleged that during one of these encounters, E.M. and the defendant engaged in sexual intercourse, and in another, the defendant kissed E.M. using his tongue. The defendant was indicted on four counts of aggravated felonious sexual assault and was also charged by information with two counts of simple assault.

Prior to trial, the defendant filed a motion *in limine* to exclude as hearsay the statements E.M. made to Michelle McMurray, the sexual assault nurse examiner, because they were made "for purposes of a criminal investigation and not for purposes of medical diagnosis or treatment." The court denied the motion. The defendant renewed his objection at trial and the court overruled the objection after a hearing.

The defense also objected to the guardian ad litem's request to sit beside E.M. during her testimony, arguing that the guardian ad litem's presence would lend the victim's testimony greater credibility and improperly affect the emotions of the jury. The court also overruled this objection.

After the close of the State's case, the court dismissed two of the counts of aggravated felonious sexual assault. The jury convicted the defendant on the remaining charges. This appeal followed.

The defendant first argues that the trial court erred in admitting the hearsay statements E.M. made to McMurray because there was insufficient evidence to conclude that E.M. intended to make the statements for purposes of medical diagnosis or treatment as required by New Hampshire Rule of Evidence 803(4).

"We accord the trial court considerable deference in determining the admissibility of evidence, and we will not disturb its decision absent an unsustainable exercise of discretion." *State v. Legere*, 157 N.H. 746, 758 (2008), *cert. denied*, 129 S. Ct. 1623 (2009) (quotation omitted). To demon-

strate an unsustainable exercise of discretion, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

■ "Hearsay is generally defined as an extrajudicial statement offered in court to show the truth of the matter asserted in the statement." *State v. Soldi*, 145 N.H. 571, 575 (2000) (quotation omitted). Hearsay evidence is generally inadmissible, subject to certain well-delineated exceptions. *Id.*; *see also* N.H. R. Ev. 801(c), 802.

■ One such exception, "Statements for Purposes of Medical Diagnosis or Treatment," applies to:

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances indicating their trustworthiness.

N.H. R. Ev. 803(4). The rationale for this exception is that statements made with the purpose of obtaining medical attention are usually made with the motivation to obtain an accurate diagnosis or proper treatment and thus there is normally no incentive to fabricate. *Soldi*, 145 N.H. at 575-76.

■ We have interpreted Rule 803(4) as having a three-part test for the exception to apply. *State v. Graf*, 143 N.H. 294, 303 (1999). "A court must find first that the declarant intended to make the statements to obtain a medical diagnosis or treatment." *State v. Roberts*, 130 N.H. 730, 740 (1993). Second, "the statements must describe medical history, or symptoms, pain, sensations, or their cause or source to an extent reasonably pertinent to diagnosis or treatment." *Id.* at 741 (quotation omitted). Third, the court must find that the circumstances surrounding the statements support their trustworthiness. *Id.* at 743.

■ The defendant challenges the trial court's findings regarding only part one of this test. With respect to part one's intent requirement, "we require extra care in determining the declarant's intent" when the declarant is a child. *Graf*, 143 N.H. at 303-04 (quotations omitted). This is because "[i]t is difficult for a court to discover whether a young child completely understands the purpose for which information is being obtained from her." *State v. Wade*, 136 N.H. 750, 755 (1993).

The defendant argues that the first part was not met because E.M. "never asked for nor declined any medical treatment, nor did [she] make any physical complaints to McMurray that might have indicated she was seeking medical assistance." The defendant relies upon *Wade*, in which a five-year-old child revealed to a pediatrician that she had been sexually assaulted. *Id.* at 752. The trial court admitted her statements under Rule 803(4), stating, "[T]his falls within 803(4), as this is taking a medical history. The doctor has testified what his purposes were, and that he had concerns with respect to the safety of the child . . . ." *Id.* at 753 (quotation omitted). The trial court also admitted similar statements the child made to a gynecologist. *Id.* We reversed because, although the doctors testified about their states of mind and intentions in speaking with and examining the child, nothing in the record shed any light on the child's intentions in making the hearsay statements. *Id.* at 756. Additionally, the trial court's ruling indicated that it had conflated parts one and two of the Rule 803(4) test. *Id.* at 756-57.

Here, however, the trial court considered each part of the Rule 803(4) test separately and articulated the evidence that satisfied each part. With respect to the first part, the court stated:

> The first [part] is the declarant's intent in making the statements, which can be established by circumstantial evidence, and in finding that this prong has been met, the Court notes that she knew she was going to the hospital. The declarant knew she was going to the hospital to be treated. And I base this on her fear that she specifically testified that she knew if she went to the hospital she was going to get a shot. In fact, I think her testimony was that she did get a shot. But she certainly was aware what could happen to her if she went to the hospital and that it would involve treatment.
>
> Further, the temporal relationship between the declarant's complaints, the upheaval in her home, and her visit by ambulance to the hospital supports a finding that the declarant knew the reason for her hospital visit [to be] related to both her physical and her emotional health.
>
> And finally, Nurse McMurray had explained to her what her role as a nurse was and what the reasons for the exam were before [E.M.] made the statements, so she knew at the time that she made those statements that it involved treatment. So the first prong has been met.

We conclude that the record contains ample evidence to support the trial court's finding of the declarant's intent. E.M. was taken to the hospital by ambulance shortly after she spoke with her mother about the defendant and observed her parents crying in response to her revelations. *Cf. State v. White*, 145 N.H. 544, 555 (2000) ("temporal proximity" between complaints, "emotional upheaval" surrounding the incident, and visit to the hospital supports finding that declarant had requisite intent), *cert. denied*, 533 U.S. 932 (2001), *petition for habeas corpus denied by White v. Coplan*, 296 F. Supp. 2d 46 (D.N.H. 2003), *vacated on fed'l constitutional grounds*, 399 F.3d 18 (1st Cir.), *cert. denied*, 546 U.S. 972 (2005). Later, when McMurray asked E.M. why she had been taken to the hospital, she responded that "she was at somebody's house that was a couple of doors down from her, and that she was in this person's apartment where she had some [sexual] relations" with that person. She also testified that she feared going to the hospital because she might need to get a shot. Thus, E.M. associated hospitals with medical treatment and understood the reason for her visit to the hospital to be related to "sexual relations."

While it is true that E.M. never complained of pain, *see White* 145 N.H. at 555 (child's complaint of pain was factor in finding that child understood that hospital visit was for medical purpose), we disagree with the defendant's contention that she made no "complaints, let alone medical complaints," and that there was no evidence offered as to whether E.M. exhibited symptoms or made any complaints that required an ambulance. E.M.'s parents testified that she was "shak[ing] like something happened," that she was noticeably upset and scared, and that her arms were in "a protective position." Later, after E.M.'s mother questioned her privately, E.M. was "crying, yelling for mommy." This testimony supports an inference that E.M. was scared and upset about what happened and that she understood that it affected her health and well-being.

McMurray also testified that she explained to E.M. before questioning or examining her that McMurray's "role as a nurse was to make sure that she was physically okay, that she didn't have any bumps or bruises, of course in terminology that she would understand, but that she didn't have any bumps or bruises that needed any kind of medical attention at that time." While this testimony is direct evidence of McMurray's intent, it is also circumstantial evidence of E.M.'s intent. *See United States v. Renville*, 779 F.2d 430, 438-39 (8th Cir. 1985) (eleven-year-old child's statements to doctor admissible where he explained to child before questioning her that his examination and questions were necessary to treat her); *see also Wade*, 136 N.H. at 756 (citing *Renville* for same proposition). A ten-year-old child could be expected to understand such an explanation and tailor her statements to the medical purpose McMurray articulated. *Cf. White*, 145

N.H. at 555 (inferring that twelve- and eight-year-old declarants could be expected to understand medical purpose of a visit to the hospital).

Finally, the defendant argues that an existing relationship between a child and doctor is relevant to the child's understanding of the purpose of a medical visit. *See Graf*, 143 N.H. at 304. We agree that this factor, should it be present, is relevant to determining the child's understanding. However, we have never held that this factor must be present for the Rule 803(4) exception to apply. We therefore hold that the trial court did not unsustainably exercise its discretion in finding that the first part of the Rule 803(4) test was satisfied.

The defendant next argues that the trial court erred in permitting the guardian ad litem to sit beside E.M. during her testimony. Specifically, he argues that "there was an insufficient basis upon which to find that such an extraordinary accommodation was necessary." He contends that "the accommodation unfairly and improperly appealed to the emotions of the jury and bolstered E.M.'s credibility."

Before the State called E.M. to the stand, the guardian ad litem requested to sit beside E.M. during her testimony. The guardian ad litem indicated that her request was "based on what the victim ha[d] said to [her]."

Our case law and evidentiary rules make clear that the trial court enjoys broad discretion in regulating the proceedings before it. *See, e.g., Sabinson v. Trustees of Dartmouth College*, 160 N.H. 452, 461 (2010); N.H. R. Ev. 611(a). We have also recognized that there is a legitimate state interest in "reduc[ing] the trauma experienced by child victims during the judicial process." *State v. LaPorte*, 134 N.H. 73, 77 (1991). While we have never addressed the specific issue of allowing support persons to accompany child witnesses while testifying, numerous other jurisdictions have permitted such involvement. *See, e.g., State v. Menzies*, 603 A.2d 419 (Conn. App. Ct.) (guardian ad litem sat with six-year-old witness), *cert. denied*, 608 A.2d 690 (Conn. 1992); *Baxter v. State*, 522 N.E.2d 362 (Ind. 1988) (mother held the hand of her nine-year-old during testimony); *State v. Johnson*, 528 N.E.2d 567 (Ohio Ct. App. 1986) (eight-year-old sat on aunt's lap); *Com. v. Pankraz*, 554 A.2d 974 (Pa. Super. Ct.) (four-year-old sat on grandmother's lap), *appeal denied*, 563 A.2d 887 (Pa. 1989); *Mosby v. State*, 703 S.W.2d 714 (Tex. Ct. App. 1985) (guardian ad litem sat 15-20 feet behind eleven-year-old witness). Additionally, a federal statute sanctions the practice: "A child testifying at or attending a judicial proceeding shall have the right to be accompanied by an adult attendant to provide emotional support to the

child." 18 U.S.C. § 3509(i) (2006); *see also* Cal. Penal Code § 868.5 (Deering Supp. 2010); Idaho Code § 19-3023 (Michie 2004); Mich. Comp. Laws Ann. § 600.2163a(4) (West 2010).

The defendant urges us to require extensive safeguards before allowing a support person to sit with a witness. He argues that we should adopt the holding in *State v. T.E.*, 775 A.2d 686 (N.J. Super. Ct. App. Div.), *cert. denied*, 784 A.2d 719 (N.J. 2001), which identified nine "factors to guide the trial judge's discretion in determining whether to permit" a support person to sit with or assist a witness. These factors include a requirement for a preliminary showing of "substantial need" for the accommodation, an opportunity for the defendant to propose alternatives, a cautionary instruction to the support person, and an instruction advising the jury of the support person's purpose. *Id.* at 697-98.

We decline the defendant's invitation to set forth specific factors that a trial court must consider in making such a determination. The trial courts are well-equipped to identify and apply the relevant factors in each case. The trial judge is in the best position to make a determination as to whether a third party should accompany or support a child witness during testimony, and as such we will not disturb the trial court's ruling absent an unsustainable exercise of discretion.

In this case, we cannot say that the trial court unsustainably exercised its discretion in allowing the guardian ad litem to sit with the child witness while she testified. According to the record, the child witness herself requested that the guardian accompany her on the witness stand. The judge paid close attention to the witness's testimony to ensure that the guardian's presence did not influence it, and at defense counsel's request, even asked the prosecutor to direct the witness to look at the prosecutor and not at the guardian. Considering the witness's age and the subject matter of the testimony, it was well within the trial judge's discretion to allow the guardian to sit with the child during her testimony.

The defendant further argues that the trial court should have given a cautionary instruction to the jury to explain who the guardian was and that the jury was not to give the witness's testimony any additional weight as a result of the guardian's presence. The defendant never requested such an instruction at trial. However, the jury should not be left to speculate as to the support person's role in the proceedings. Therefore, in the future, trial courts should give a cautionary instruction, *sua sponte*, when a support person accompanies a child witness while testifying. The instruction should identify the role of the support person, and "advise the jurors that the purpose of the support person is to attempt to place the child at

ease while testifying and that the presence of the support person should not affect their assessment of the credibility of the child's testimony." *T.E.*, 775 A.2d at 698. Because no instruction was requested in this case, however, we cannot say that the failure to give such an instruction was error. *Cf. State v. Simonds*, 135 N.H. 203, 207 (1991) (defendant could not complain of error on appeal when he failed to request limiting instruction or object to its absence at trial); *State v. Hebert*, 158 N.H. 306, 315 (2009) (defendant must object to trial court's failure to give limiting instruction to preserve issue for appellate review).

*Affirmed.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.