Nos. 101,341
101,681

STATE OF KANSAS, *Appellee/Cross-appellant,* v. SAMUEL JOSEPH
ROCHELLE, II, *Appellant/Cross-appellee.*
(298 P.3d 293)

Opinion filed April 12, 2013.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, argued the cause, and *Meryl Carver-Allmond,* of the same office, was on the briefs for appellant/ cross-appellee.

*Amy E. Taylor,* assistant county attorney, argued the cause, and *Christina Trocheck,* assistant county attorney, *Ellen Mitchell,* county attorney, and *Steve Six,* attorney general, were with her on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

ROSEN, J.: In this direct appeal we consider what findings, if any, a district court must make before permitting—or declining to permit—a comfort or support person to accompany a child victim witness on the stand at trial. Samuel Rochelle contends the district court erred when it allowed a 6-year-old child to testify against him with her school counselor sitting next to her without the court first making findings that the procedure was necessary. Rochelle argues this seating arrangement improperly influenced the jury and denied him a fair trial.

We hold that whether a comfort person may accompany a witness is a discretionary decision left to the district court, which has the power to regulate the presentation of evidence during trial. While a district court is not required to make a finding of necessity, we offer guidelines for other district courts to consider in making similar determinations. We note that both Rochelle and the State raise additional sentencing issues, both of which are governed by our prior decisions.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2007, Rochelle was charged with rape, aggravated indecent liberties with a child, aggravated indecent solicitation of a child, and two counts of aggravated criminal sodomy after his then 5-year-old niece, A.S., told her parents that Rochelle put his "pee pee" in her mouth and touched her vagina. The State filed a pretrial motion to take A.S.'s testimony by closed-circuit television due to her young age and because her therapist suggested that A.S. might be traumatized by testifying in court. Rochelle objected. At a pretrial hearing on the State's motion, the State, again citing A.S.'s young age, requested that A.S.'s school counselor be allowed to sit next to her. The State pointed out that the counselor was not a witness in the case, had no involvement in the incident, and would not assist or encourage A.S. in any way. Rochelle's attorney stated that for purposes of the pretrial hearing, he did not object.

The court permitted the school counselor to sit next to A.S. at the pretrial hearing. Satisfied with A.S.'s performance on the stand, the State withdrew its motion for closed-circuit television and

agreed to take A.S's testimony in the courtroom rather than by television. At another pretrial hearing a few weeks later, the State asked the court to allow the school counselor to sit with A.S. at the jury trial because of A.S.'s age and because her parents were endorsed witnesses who could not accompany her to the stand. Defense counsel objected, arguing that based on A.S.'s satisfactory performance at the previous hearing, the child did not require that kind of support, and its use would create an artificial appearance of its necessity.

The district court held that it would permit a familiar person to sit with A.S. at trial on the condition that the person make no gestures or otherwise influence A.S. in any way. The court stated that it was permitting this arrangement because the courtroom could be especially uncomfortable for a young child. The court granted the defense counsel's request to order the State to proffer its introduction of the school counselor to the jury. The State complied and at trial told the jury it would be asked to consider only the evidence from the testimony of witnesses and admitted exhibits.

A different judge presided over the trial. During trial, the State again asked whether the school counselor could sit next to A.S. on the stand. Rochelle objected, arguing that such an arrangement had the potential to generate inappropriate sympathy for the witness. The court kept the previous order in place, subject to the requirement that the counselor would not make any motions or gestures that would convey any type of emotion to the jury relating to A.S.'s testimony. The court ordered the State to give the counselor this admonition.

A.S. testified at trial. During defense counsel's cross-examination of A.S., the counselor interjected by clarifying for counsel what A.S. was saying during an apparent misunderstanding regarding a stuffed animal she brought with her to the stand, saying:

"[School counselor]: Can I interrupt? She's describing a person named Jackson. She thinks you're talking about—she thinks that you asked her about a friend she has at school. I don't think she realizes that you're talking about—"

Defense counsel asked to approach the bench, but did not object, and A.S. continued to present her testimony. A review of the

record indicates that A.S. did not have difficulty testifying about the sexual abuse; occasionally, however, she did not answer the question asked. An investigator who interviewed A.S. also testified at trial and corroborated her story.

Rochelle took the stand in his own defense and told the jury that he was left to babysit A.S., along with her sister and his own two sons, while his wife and A.S.'s mother went shopping. Rochelle said he looked at A.S.'s vagina when she complained that it was irritated, but said he had no sexual contact with A.S.

When the presentation of evidence concluded, the jury received an instruction based on Pattern Instructions for Kansas (PIK) Crim. 3d 68.12:

"Like all cases, this is an important case. If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the State to decide whether to resubmit the undecided charge or charges to a different jury at a later time. Another trial would be a burden on both sides."

The jury convicted Rochelle of one count of aggravated criminal sodomy and one count of aggravated indecent liberties with a child. Rochelle filed a departure motion based solely on his lack of any prior criminal convictions. The court granted Rochelle's motion, holding it could not ignore Rochelle's lack of criminal history. The court held that "after substantial thought," it would allow departure from the usual Jessica's Law life sentence with a mandatory minimum of 25 years to the sentencing guidelines and sentenced Rochelle to a total of 155 months' imprisonment for one count of aggravated criminal sodomy and 59 months' imprisonment on the count of aggravated indecent liberties, with both sentences to run consecutive for a total of 214 months. Both Rochelle and the State filed timely notices of appeal, and their appeals were consolidated by order of this court. Jurisdiction is proper under K.S.A. 22-3601(b)(1) (conviction of off-grid felony crime).

COMFORT/SUPPORT PERSON AND THE RIGHT TO A FAIR TRIAL

Rochelle initially argues that his right to a fair trial was violated when the district court allowed A.S. to testify with her school counselor sitting next to her without first making any findings that the

seating arrangement was necessary to her testimony. Rochelle does not argue that the comfort person should not have been permitted to sit with A.S.; he frames the question as whether a district court must make any findings before exercising its discretion to permit a comfort person and, if so, what those findings must be.

At the outset, we note as a fundamental principle in the administration of justice that a criminal defendant is entitled to a trial in which the verdict is based on facts and logical reasoning, not on speculation or emotion. To ensure that a verdict is based on the proper reasoning, the trial judge must keep order in the courtroom and has broad discretion in controlling courtroom proceedings. See *State v. Kemble*, 291 Kan. 109, 114, 238 P.3d 251 (2010) (quoting *State v. Hamilton*, 240 Kan. 539, 545, 547, 731 P.2d 863 [1987]) (" 'trial judge is not merely a moderator, but is the governor of the trial' "; " 'a trial court . . . has broad discretion' " in controlling trials); *State v. McNaught*, 238 Kan. 567, 577-78, 713 P.2d 457 (1986) (court must ensure verdict free from emotion, speculation, prejudice, courtroom disturbance, or improper influence); accord *State v. Williams*, 259 Kan. 432, 446, 913 P.2d 587 (1996).

Our standard of review is guided by these principles and requires us to consider the district court's approval of the school counselor's proximity to A.S. under an abuse of discretion standard. Judicial discretion is abused if judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

In order to determine if the use of a comfort person requires reversal in this case, we ask the following questions: What authority does a district court have to allow a comfort person? Are findings necessary before a district court exercises its discretion to permit the practice? If so, what is the nature of the required findings and

were they made? If no findings were made, was there prejudicial error?

*What authority does a district court have to allow the presence of comfort/support person?*

No statute or caselaw from this court directly addresses the use of comfort/support person accompanying a witness to the stand, especially a child witness. But see *State v. Rowray*, 18 Kan. App. 2d 777, Syl. ¶¶ 1, 3, 860 P.2d 772, *rev. denied* 254 Kan. 1009 (1993). We therefore return to the standard of review cited above, in which we quoted the often-repeated notion that district courts may exercise broad discretion in controlling the courtroom. This can include control over where witnesses are seated and their proximity to a comfort person. See *Kemble*, 291 Kan. at 114 (trial court has broad discretion in controlling courtroom).

In *State v. Norwood*, 217 Kan. 150, 152, 535 P.2d 996 (1975), we said:

"A defendant in a criminal trial is entitled to a fair and impartial trial. . . . The purpose of a trial in a criminal case is to ascertain the truth or falsehood of the charges against the defendant, and it is a part of the duty of the trial judge to see that the full truth is developed by the evidence. [Citation omitted.] In order to achieve this purpose we have held it to be proper for the trial judge to use whatever means that reasonably appear necessary, under the circumstances, to develop fully the truth of the matter in issue. Such conduct by the trial judge does not constitute ground for a new trial unless it appears his action is of such a prejudicial nature it would tend to reasonably influence the minds of the jury against the defendant, thus denying him the right to a fair and impartial trial. [Citation omitted.]."

And in *McNaught*, this court similarly summarized the district court's function in controlling the arrangement and procedure of the courtroom, stating:

"In the administration of justice, the trial judge is charged with the preservation of order in his court and with the duty to see that justice is not obstructed by any person or persons whatsoever. A large measure of discretion resides in the trial court in this respect, and its exercise will not be disturbed on appeal unless it appears that prejudice resulted from the denial of a legal right. One of the ideals of criminal jurisprudence is that a defendant is entitled to a trial in a calm judicial atmosphere, to minimize any possibility of a decision being rendered on speculation or emotion rather than on the facts and logical reasoning." 238 Kan. at 577.

We conclude that it lies within the discretion of the district court to allow a third person to accompany a witness to the stand for the purpose of providing support to that witness. See *Rowray*, 18 Kan. App. 2d 772, Syl. ¶¶ 1, 3 (mother of child-victim witness permitted to sit behind minor witness while testifying at trial); 18 Kan. App. 2d at 775-77.

The finding that a district court has discretion to allow a comfort or support person is shared with a number of other jurisdictions. See, *e.g.*, *Miles v. State*, 201 Ga. App. 568, 569, 411 S.E.2d 566 (1991) (victim-witness coordinator permitted to sit with child sexual abuse victim because presence needed for orderly presentation of testimony, and no evidence coordinator coached or influenced the child); *Baxter v. State*, 522 N.E.2d 362, 365 (Ind. 1988) (conviction upheld after mother held hand of 9-year-old child victim during testimony); *State v. Letendre*, 161 N.H. 370, 376-77, 13 A.3d 249 (2011) (trial court has discretion in regulating proceedings before it; no error where child testified with guardian ad litem seated beside her); *Soap v. State*, 562 P.2d 889, 892 (Okla. Crim. 1977) (conviction upheld after mother stood by and held hand of 7-year-old child during testimony; within trial court's discretion and no showing of clear abuse); *Com. v. Pankraz*, 382 Pa. Super. 116, 125-27, 554 A.2d 974 (1989) (trial court has broad discretion to conduct trial; no error in permitting 4-year-old child to testify in grandmother's lap since no prejudice shown or that child was influenced); *State v. Keeley*, 8 Utah 2d 70, 71-72, 328 P.2d 724 (1958) (district court had discretion to permit employee of school district to whom victim first reported assault to sit beside 10-year-old witness at trial); *State v. Shanks*, 253 Wis. 2d 600, 607-10, 644 N.W.2d 275 (Wis. App. 2002) (no abuse of discretion when grandmother permitted to sit next to 3-year-old victim at trial). See generally Annot., 82 A.L.R.4th 1038 (propriety and prejudicial effect of third party accompanying or rendering support to child-victim witness during testimony; most courts find no reversible error); see also 18 U.S.C. § 3509(i) (2006) (child testifying has right to be accompanied by adult in close proximity for emotional support; court discretion).

We have also applied this discretionary standard several times before in cases in which the appearance or actions of a person sitting in the courtroom were challenged as having undue influence on the jury. See, *i.e.*, *State v. Gant*, 288 Kan. 76, 82, 201 P.3d 673 (2009) (although issue not properly preserved on appeal, court noted it is within district court's discretion to control detective's proximity to prosecutor during trial); *State v. Kirkpatrick*, 286 Kan. 329, 342-44, 184 P.3d 247 (2008) (district court did not per se abuse its discretion in permitting one of the State's witnesses to sit at counsel's table during trial; fair trial rights not violated).

Our next inquiry is whether, in exercising discretion, a district court must make any findings of necessity before permitting a comfort person to accompany a child victim witness during testimony at trial.

*What findings, if any, must a district court make before determining whether a comfort/support person may accompany a child-victim witness?*

Rochelle argued in his brief and reiterated during oral argument that the district court should have conducted a balancing test or some other form of inquiry into whether A.S. needed a comfort person to sit next to her in order to be able to testify. He argues that A.S. never showed any signs she would have difficulty testifying. In short, in Rochelle's view, a district court abuses its discretion unless a predicate finding of necessity supports the use of a comfort person.

Rochelle first directs our attention to K.S.A. 22-3434, the statute for obtaining child testimony via closed-circuit television, and argues that it demonstrates a legislative intention that some finding of necessity is required before allowing a child to testify in a nontraditional manner. This argument stems from the statutory language requiring the State to establish by clear and convincing evidence that the child will be so traumatized by testifying in court that the child would not be able to communicate to the jury. The statute further requires the court to make an individualized finding of this trauma before proceeding with closed-circuit television testimony. K.S.A. 22-3434(b).

We note that the legislative history for the statute indicates that the statute was created for the purpose of protecting children from unnecessary trauma created by testifying. See Minutes, Senate Committee on Judiciary, February 27, 1990 (alternative method of obtaining testimony necessary to protect child victims from testifying about "unspeakable acts" in front of strangers).

But we decline to pigeonhole alternative ways of obtaining a child's testimony by inevitably requiring a predicate finding of necessity. The necessity requirement in K.S.A. 22-3434 relates to the child not being present in the courtroom. While Rochelle's argument does not focus on the Confrontation Clause, we note that, as between a child who does not appear in court and one who does, the presence of a comfort person next to the child witness is preferable from a confrontation standpoint. The essence of K.S.A. 22-3434 in that regard is to permit the child witness to testify outside the courtroom but only when that nonconfrontational testimony is necessary.

As for whether specific findings must be made, we look to other jurisdictions for guidance. In *State v. T.E.*, 324 N.J. Super. 14, 28-35, 775 A.2d 686 (2001), the Superior Court of New Jersey considered a similar case involving a child witness testifying with her therapist sitting next to her during the jury trial. The prosecutor attempted unsuccessfully to question the child several times before asking the court to permit the therapist to accompany her. The defendant objected on grounds that the therapist would garner from the jury undue sympathy for the child. Basing its decision on the witness' age and the nature of her testimony, the court overruled the objection and allowed the therapist to sit with the witness so long as the therapist did not give any signals or betray any expressions during the child's testimony. The court instructed the jury to disregard the therapist when it made any credibility determinations.

The appellate court held that the district court had full discretion over the management of the courtroom and the manner in which witnesses testify, noting that the general rules become relaxed in the interest of helping young witnesses testify. While acknowledging that a number of other jurisdictions permit the use of a comfort

person, the court determined that a district court should engage in a balancing test to weigh the potential prejudice against the defendant stemming from increased sympathy for the victim versus advancing the State's interest in presenting evidence of crucial witnesses. 342 N.J. Super. at 30-33.

The court held that based on a showing of substantial need and with appropriate safeguards imposed, including that the comfort person not speak or make gestures, and a cautionary instruction, the district court had the discretion to permit someone to sit with the child witness. It provided several factors for district courts to consider to help guide their discretion, including: (1) a preliminary showing of substantial need, meaning that a showing be made that the child is unlikely to provide meaningful testimony without a comfort person; (2) the defendant's ability to suggest alternatives, such as recesses or testimony by closed-circuit television; (3) the choice of the support person to minimize any potential prejudice; family members may seem less prejudicial than someone unrelated to the child; (4) logistics of where the support person is seated, whether behind or next to the child; (5) a cautionary instruction given to the support person to advise against speaking or indicating approval or disapproval of the child's answers; and (6) a jury instruction for the jury to exclude the support person in its credibility determinations. 342 N.J. Super. at 33-34.

One noteworthy case challenging *T.E.*'s requirement of a finding of substantial need comes from the New Hampshire Supreme Court, which considered whether a district court must make findings of necessity prior to permitting a 10-year-old victim to testify in a sexual assault prosecution with her guardian ad litem sitting next to her. *Letendre*, 161 N.H. 370. The *Letendre* court explicitly rejected *T.E.*'s holding that a finding of substantial need must be present before a comfort person is permitted. It elected instead to apply an abuse of discretion standard, concluding that trial courts are in the best position to identify and apply the relevant factors in each case and that the trial judge is in the best position to determine whether a third party should support a child witness during testimony. 161 N.H. at 377. In that case, the child actually asked that her guardian ad litem accompany her to the stand, and the

judge monitored the behavior of the comfort person. Based on these factors, the child's age, and the subject matter of her testimony, the appellate court found it was within the trial court's discretion to permit the comfort person to sit with the child at trial. 161 N.H. at 377.

We adopt the New Hampshire approach and hold that the district court is in the best position to determine on a case-by-case basis whether a comfort person is appropriate. In doing so, we decline to require district courts to make specific findings of substantial need before permitting a comfort person to accompany a child witness on the stand. It is within the broad discretion of the district court to control the manner of a witness' testimony, and whether a child is accompanied by a comfort person lies within that discretion.

*Guidelines to consider*

Rochelle concedes that if the judge was not required to make a finding of necessity prior to allowing A.S. to sit with her school counselor, the court acted within its discretionary bounds in permitting this arrangement. We thus need not reach the further questions of whether other types of findings might be prudent or required, or whether prejudice occurred. Yet, because no statute or prior caselaw from this court provides factors that trial courts should consider, we deem it helpful to offer a list of considerations for courts confronting similar issues.

A district court in Kansas may consider: (1) the age of the witness, although we decline to set an age limit; (2) the argument for and against the use of a support person and whether the defendant has had an opportunity to suggest alternatives; (3) the choice of the comfort person and whether it is someone related to the child, which may lessen any appearance of prejudice; (4) the logistics of where the support person is seated, whether beside, behind, or completely away from the child but still in the courtroom so that his or her presence is less obvious; (5) the availability of items that could make the courtroom more comfortable without the support person, including a child-size witness chair or the use of child-friendly terminology during direct and cross-examination; (6) a

cautionary instruction provided up front to the jury directing it to disregard the comfort person and to not permit the person's presence to influence credibility determinations; and (7) a cautionary instruction provided to the comfort person directing the person not to speak, gesture, or otherwise make any indication that he or she approves or disapproves of the child's testimony.

The above list of suggested factors is not intended to be exclusive or mandatory and should not prevent a court from considering other relevant factors in a particular case. As we stated before, the decision whether to permit a support person lies within the court's discretion, but we offer these guidelines as a starting point in making that determination. The district court in the present case provided reasons for its decision to permit the support person, including A.S.'s age and the general notion that a courtroom may be frightening to a 6-year-old victim/witness. While these reasons lack the comprehensiveness our suggested factors would call for, we find no abuse of discretion and deny Rochelle's claim on this issue.

## THE ALLEN-*TYPE INSTRUCTION*

Rochelle did not raise an objection to the *Allen*-type instruction at trial, although this does not entirely preclude our review. Instead, this court reviews the instruction under a clearly erroneous standard, which requires us to determine whether we are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. See *State v. Trujillo*, 296 Kan. 625, Syl. ¶ 2, 294 P.3d 281 (2013); K.S.A. 22-3414(3).

The jury was provided an instruction based on PIK Crim. 3d 68.12, which stated that "another trial would be a burden on both sides." Rochelle argues that this language was coercive and legally incorrect and that it was clearly erroneous and requires reversal and a new trial because there was a real possibility the jury would have rendered a different verdict in the absence of the instruction. See *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896).

Rochelle supports his argument by stressing that the jury acquitted him of three of the five counts against him, arguing the jury had a "natural imperative" not to put A.S. through a second

trial and that it felt pressured to reach a decision on at least some of the counts. The State argues that based on the overwhelming evidence against Rochelle at trial, there was no real possibility the jury would have rendered a different verdict in the absence of this instruction.

Rochelle's argument is familiar to this court and has been directly addressed and denied previously. In *State v. Salts*, 288 Kan. 263, 265-67, 200 P.3d 464 (2009), for example, this court held that although the *Allen*-type instruction was erroneous, it did not warrant reversal under a clearly erroneous standard because there was no real possibility the jury would have rendered a different verdict if the error had not occurred. Since *Salts*, this court has repeatedly denied similar arguments because the instruction's error did not outweigh the overwhelming evidence of the defendant's guilt. An abbreviated list of recent cases so holding includes *Warrior*, 294 Kan. at 514-15; *State v. Burnett*, 293 Kan. 840, 854-55, 270 P.3d 1115 (2012); *State v. Washington*, 293 Kan. 732, 740, 268 P.3d 475 (2012); *State v. Brown*, 291 Kan. 646, 659-60, 244 P.3d 267 (2011); *State v. Ellmaker*, 289 Kan. 1132, 1146-47, 221 P.3d 1105 (2009), *cert. denied* 130 S. Ct. 3410 (2010). In adopting the clearly erroneous standard of *Trujillo*, we did not reject the analytic framework of *Salts*, which remains sound law.

It was error for the district court to provide the *Allen*-type instruction, but the error was not reversible because the evidence was substantial against Rochelle. A.S.'s story remained detailed and consistent throughout the entire investigation and jury trial process; Rochelle denied sexual contact when initially confronted by police but before knowing the nature of A.S.'s allegations against him; and the examining nurse testified it is uncommon to find physical evidence of sexual abuse. Additionally, the jury did not appear rushed or pressured to render a verdict. It posed two questions to the court during deliberations and asked for a transcript of one witness' testimony.

We adhere to our prior caselaw and hold that although the instruction was erroneous, the error was harmless in light of the substantial evidence against Rochelle. We are not convinced that

the jury would have rendered another verdict in the absence of the instruction.

## SENTENCING DEPARTURE

The State cross-appeals the district court's decision granting Rochelle's downward departure motion because it was premised only upon Rochelle's lack of criminal history. It argues Rochelle's status as the victim's uncle outweighs any mitigating factors. In response, Rochelle notes the statute for departure motions, K.S.A. 21-4643(d), states that criminal history is a factor the sentencing court may consider when determining whether to grant a downward departure motion.

Appellate courts review the grant of a sentencing departure motion for an abuse of discretion. See *State v. Roberts*, 293 Kan. 1093, 1097, 272 P.3d 24 (2012). We have set out the factors leading to an abuse of discretion in our earlier discussion.

Convictions for aggravated criminal sodomy and aggravated indecent liberties with a child trigger a sentence statutorily mandated by Jessica's Law, codified under K.S.A. 21-4643(a)(1)(C), (D). A sentencing court "shall" impose a hard 25 life imprisonment sentence in Jessica's Law cases "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 21-4643(d). As Rochelle notes, the statute provides a nonexclusive list of factors the court may consider when determining whether to grant a departure, including whether the defendant has no significant criminal history. K.S.A. 21-4643(d)(1).

But even though there may be mitigating factors, a district court is not required to depart simply because a mitigating factor exists. A district court has the discretion either to grant or deny the request. And in exercising that discretion, a district court first reviews the mitigating circumstances and then weighs those circumstances against any aggravating circumstances, ultimately determining whether substantial and compelling reasons warrant a departure. Mitigating factors do not necessarily justify substantial and compelling reasons on their own; the important question is whether those mitigating factors together create substantial and compelling

reasons to justify a departure. *State v. Baptist*, 294 Kan.728, 735, 280 P.3d 210 (2012).

Substantial reasons are those that are " 'real, not imagined, and of substance, not ephemeral,' " while compelling factors are such that the court is forced to "abandon the status quo" and to venture beyond or depart from the ordinary sentence. See *State v. Blackmon*, 285 Kan. 719, 724, 176 P.3d 160 (2008). In *State v. Ortega-Cadelan*, 287 Kan. 157, Syl. ¶ 4, 194 P.3d 1195 (2008), we held that the mitigating circumstances listed in K.S.A. 21-4643(d)(1)-(6) do not constitute per se substantial and compelling reasons for a departure sentence. We also held that whether mitigating circumstances constitute substantial and compelling reasons is determined on a case-by-case basis and that the factors listed in the statute serve merely as a guide for analysis and are not exclusive. 287 Kan. at 162, 165. In a Jessica's Law case such as Rochelle's, the defendant must show substantial and compelling reasons in order to justify a downward departure. See *Baptist*, 294 Kan. at 735.

We have, more often than not, upheld a district court's decision to deny a defendant's departure motion after finding its discretion was not abused. See, *e.g.*, *State v. Plotner*, 290 Kan. 774, 780-81, 235 P.3d 417 (2010) (district court said crimes were " 'reprehensible' " and that statute's intent was to tie crimes to psychological trauma); *State v. Trevino*, 290 Kan. 317, 322-23, 227 P.3d 951 (2010) (same; upholding denial of departure where defendant had no criminal history but was in a relationship of "great trust" with victim); *State v. Robison*, 290 Kan. 51, 55-57, 222 P.3d 500 (2010) (reasonable people could agree with district court's denial of departure motion, which included a lack of significant criminal history); *State v. Seward*, 289 Kan. 715, 722, 217 P.3d 443 (2009) (no abuse of discretion in denial of departure motion based on lack of criminal history and several other mitigating factors); *State v. Spotts*, 288 Kan. 650, 655, 206 P.3d 510 (2009) (no error in denying departure motion based on five mitigating circumstances, including no history of sexually motivated crimes, due to weight of aggravating circumstances).

But an abuse of discretion is possible. We held in *State v. Spencer*, 291 Kan. 796, 815-16, 248 P.3d 256 (2011), that the district court abused its discretion in granting a downward departure from Jessica's Law after it failed to appropriately weigh competing information. In *Spencer*, the defendant claimed his age, lack of criminal record, support from family and friends, and degree of harm justified a more lenient sentence. The State argued the sexual abuse in that case occurred for years before any allegations surfaced. This court found the State's argument to be sensible and accurate, and that no reasonable person would regard the fact the defendant had not been caught and prosecuted earlier as a substantial and compelling reason to grant a departure for lack of criminal history. 291 Kan. at 814. We acknowledged in *Spencer* that one factor relied upon by a sentencing court may be substantial and compelling, warranting affirming a departure on appeal. See 291 Kan. at 815. But in *Spencer*, the sentencing court's overall performance was inadequate for disregarding undisputed evidence. We vacated and remanded the case for resentencing. 291 Kan. at 815-16.

Here, the district court stated that Rochelle's criminal history was not something it could ignore, while also explaining that it believed the jury's verdict was based on "more than adequately" provided evidence and that the evidence was clear beyond a reasonable doubt that Rochelle committed the offenses. The judge further stated:

"[W]hat you've cost this young lady, your niece no less, can't be repaired. . . . This little girl will have this with her the rest of her life, and there's nothing the court can do to change that, no matter what sentence I give you. . . . All I can give you is the sentence I believe is appropriate under particular facts of this case with your prior record."

A single mitigating factor can be substantial and compelling enough to grant a departure from Jessica's Law. See *Spencer*, 291 Kan. at 815. And, unlike in *Spencer*, there is no evidence here that there was more unprosecuted sexual abuse than the incident alleged. The district court articulated on the record that it was relying upon Rochelle's lack of criminal history as a basis for granting the departure. For these reasons, we find the court did not abuse its

discretion in relying upon this single factor and affirm its decision granting Rochelle's departure sentence.

Affirmed.