NOT DESIGNATED FOR PUBLICATION

No. 118,383

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

WILLIAM D. MOXLEY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed August 31, 2018. Affirmed.

*Joan Lowdon*, deputy county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*John J. Bryant*, of Bryant Law Office, of Leavenworth, for appellee.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

STANDRIDGE, J.:  William D. Moxley pled no contest to two counts of sexual exploitation of a child for "promoting any performance that includes sexually explicit conduct by a child under 18 years of age." K.S.A. 2013 Supp. 21-5510(a)(4). Count 1 was classified as an off-grid offense under K.S.A. 2013 Supp. 21-5510(b)(2), which applied since Moxley was 18 years of age or older and the child was under 14 years of age. Under Jessica's Law, the sentence applicable to that count was life imprisonment without the possibility of parole for 25 years. See K.S.A. 2013 Supp. 21-6627(a)(1)(F).

1

Count 2 was classified as a severity level 5 person felony under K.S.A. 2013 Supp. 21-5510(a)(4) and (b)(1)(B).

Moxley moved for both downward durational and dispositional departures. He asked the court to depart from his Jessica's Law sentence to the sentencing grid and then for a further durational departure. With regard to Count 2, Moxley requested a dispositional departure to probation instead of imprisonment. Moxley presented several mitigating circumstances:  he had no prior criminal history; he was sexually molested when he was a child; he served in the military, was honorably discharged, and suffered from posttraumatic stress disorder; his excessive use of alcohol rendered him unable to appreciate the criminality of his conduct; while on bond supervision, he had no positive urinalysis test results or missed appointments in 18 months; he lived in Leavenworth for over 20 years with his wife, performed maintenance at an apartment building they own together, and was active in the Korean Methodist Church; and departure would promote his reformation.

The district court held a departure hearing on August 31, 2017. Moxley presented Dr. Robert Barnett as an expert witness in the area of forensic psychology. Barnett examined Moxley in May 2016 and again in August 2017. Based on his evaluation, Barnett did not believe Moxley was a pedophile or sexual predator. In support of his belief, Barnett noted a lack of any evidence that Moxley acted out sexually with children. Barnett cited a study that concluded the sexual offender reoffense rate was 6%, but went on to explain that most reoffenders are pedophiles or sexual predators. Barnett stated that the percentage of reoffenders who are not pedophiles or sexual predators is less than 1%. Because Moxley was not a pedophile or sexual predator, Barnett concluded his risk of reoffending was "very low." Moxley also presented a character witness, who testified that Moxley was active in the Korean Methodist Church.

The State presented testimony from Johnson County Sheriff Sergeant Chris Evans. Evans worked for a task force with Homeland Security Investigations related to child pornography trading. He identified Moxley's computer as containing files with names indicative of child pornography on a file-sharing program. Evans downloaded two videos from Moxley and confirmed they were child pornography. Those videos provided the basis for a warrant to search Moxley's house.

Sergeant Evans documented the evidence found in Moxley's house and referred to his report at the sentencing hearing. On Moxley's laptop, police found 163 child pornography movie files in the download file of his file-sharing program. Evans' investigation revealed that Moxley had reinstalled the file-sharing program six days before the search, so those video files were collected in just those six days. Police also discovered two thumb drives from Moxley's house. One contained 87 movie files and 21 images depicting girls ranging in age from 6-14 years old in scenes of oral sex, sexual intercourse, masturbation, anal sex, child bondage, and graphic display of their genitalia. The other thumb drive contained 67 image files and one movie file in its deleted space depicting girls ranging in age from 6 to 12 years old in scenes of oral sex, sexual intercourse, masturbation, and graphic display of their genitalia. Finally, police identified a portable media player that stored one child pornography movie file.

The court took the departure issue into consideration and announced Moxley's sentence from the bench on September 13, 2017. The court granted Moxley's request to depart from his Jessica's Law sentence to the sentencing grid but denied Moxley's request for probation. The district court judge stated:

> "[T]he Court will find that the defendant has sustained the burden of proof for the Court
> to review the Jessica['s] Law and sentence that would be ordinarily imposed of . . . life
> without parole for 25 years to a grid sentence, finding that there is a mitigating
> circumstance and then there is a mitigating factor cited by the Court of the harm or loss

3

attributed by the crime was significantly less than typical for this offense, and, therefore, find that there is substantial and compelling reasons that are also indicated by his history and the information concerning his psychological background and the lack of concern of future commissions of these crimes, the lack of any information that he's a pedophile or a child molester, that he would—there's no evidence to suggest that he would be a—a danger to children or others; then I think there is compelling reasons to depart to the grid, and, with a criminal history score of I for this level 5 felony, the Court will find that the standard sentence is 32 months with the Department of Corrections."

The district court sentenced Moxley to 32 months in prison for each count and ordered that the sentences run concurrently. The State appealed the district court's departure sentence.

ANALYSIS

On appeal, the State argues the district court erred by granting Moxley's request to depart from the Jessica's Law sentence. First, the State contends that the district court misinterpreted the sexual exploitation of a child statute, K.S.A. 2013 Supp. 21-5510. The State also contends that several of the court's factual findings were not supported by substantial competent evidence.

We begin our analysis with the relevant portion of subsection (a)(4) of K.S.A. 2013 Supp. 21-5510, which defines the offense of sexual exploitation of a child as charged against Moxley in count 1:

"promoting any performance that includes sexually explicit conduct by a child under 18 years of age, or a person whom the offender believes to be a child under 18 years of age, knowing the character and content of the performance." K.S.A. 2013 Supp. 21-5510(a)(4).

For purposes of determining severity level, the statute provides the following directive:

"(b)(1) Sexual exploitation of a child as defined in:

(A) Subsection (a)(2) or (a)(3) is a severity level 5, person felony; and

(B) subsection (a)(1) or (a)(4) is a severity level 5, person felony, except as provided in subsection (b)(2).

(2) Sexual exploitation of a child as defined in subsection (a)(1) or (a)(4) . . . is an off-grid person felony, when the offender is 18 years of age or older and the child is under 14 years of age."

Both of Moxley's convictions for sexual exploitation of a child were charged under K.S.A. 2013 Supp. 21-5510(a)(4). Moxley's conviction in count 1 was charged as sexual exploitation of a child when he was 18 years or older and the child was under 14 years of age, making the offense an off-grid person felony that triggered a hard 25-year sentence under Jessica's Law. As we now know, the district court granted Moxley's request for a departure and ultimately sentenced Moxley to 32 months in prison on this count, which is the mid-range standard presumptive prison sentence that would have applied had the child not been under 14 years of age.

For a first-time offender, a sentencing court "shall" impose a hard 25-year Jessica's Law sentence under the facts to which Moxley pled in count 1 "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2013 Supp. 21-6627(d)(1). The statute provides a nonexclusive list of factors the court may consider when determining whether to grant a departure. K.S.A. 2013 Supp. 21-6627(d)(2). To be "'substantial,'" the reason must be "'real, not imagined, and of substance, not ephemeral.'" *State v. Brown*, 305 Kan. 674, 697, 387 P.3d 835 (2017). To be "'compelling,'" the reason must be one which "'forces the court, by the facts of the case, to abandon the status quo and venture beyond the sentence that it would ordinarily impose.'" 305 Kan. at 697.

This court's standard of review for departure sentencing depends on the issue presented. If we are considering whether the record supports an articulated reason for

departure, this court reviews for substantial competent evidence. *State v. Spencer*, 291 Kan. 796, 807, 248 P.3d 256 (2011). If we are considering whether a particular factor can "*ever*, as a matter of law, be substantial and compelling in *any* case," this court's review is unlimited. 291 Kan. at 807. Finally, when the record supports the reasons for a departure as articulated by the district court and the articulated reasons are legally valid, this court reviews whether a particular mitigating factor constituted a substantial and compelling reason to depart for an abuse of discretion. 291 Kan. at 807.

Here, the district court found several mitigating factors to be substantial and compelling reasons for justifying a downward durational departure:

- Moxley had no history of criminal activity.
- The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense because Moxley only procured the images and videos to view them; he did not distribute or produce child pornography.
- The court cited "the information provided through Dr. Barnett," including "the lack of concern of future commissions of these crimes, the lack of any information that [Moxley is] a pedophile or a child molester . . . there's no evidence to suggest that he would be a—a danger to children or others."

The State first argues that the district court's second factor—the degree of harm was less than typical for the offense—was based on an erroneous interpretation of K.S.A. 2013 Supp. 21-5510. Specifically, the State contends the court erroneously found the statute failed to provide a distinction between the crime of sexual exploitation by "procuring" child pornography and the crime of "producing" child pornography. In support of its contention, the State points out that the statute expressly distinguishes between the act of "procuring" and "producing" child pornography by listing them separately in the statute. To the extent the resolution of this issue involves interpretation

6

of K.S.A. 2013 Supp. 21-5510, it is a question of law over which this court has unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

K.S.A. 2013 Supp. 21-5510(a)(4) defines sexual exploitation of a child to include "promoting any performance that includes sexually explicit conduct by a child under 18 years of age, or a person whom the offender believes to be a child under 18 years of age, knowing the character and content of the performance." "Promoting" is widely defined to include "procuring, transmitting, distributing, circulating, presenting, producing, directing, manufacturing, issuing, publishing, displaying, exhibiting, or advertising" with the intent to arouse or gratify the sexual desire or appeal to the prurient interest of the offender or any other person. K.S.A. 2013 Supp. 21-5510(d)(2).

The State argues that, contrary to the district court's findings, the legislature clearly did distinguish between "procuring," and "producing" child pornography by separately listing them but decided to punish both of those activities in the same manner. But, in context, we construe the court to be commenting on the fact that the statute does not provide separate and distinct punishments to match the varying degrees of culpability inherent in the range of prohibited conduct set forth in the statute. The court cited a federal case, *United States v. R.V.*, 157 F. Supp. 3d 207 (E.D.N.Y. 2016), in which a New York federal district court thoroughly examined how offenders are punished under the federal counterpart to K.S.A. 2013 Supp. 21-5510. The federal court noted the wide range of culpability among child pornography offenders, which should be taken into account at the sentencing phase. 157 F. Supp. 3d at 209-11. At the departure hearing in Moxley's case, the district court judge stated:

> "I want to then delve into a little bit of the statute that applies in this case.
> . . . .
> "[T]here are really two main categories when it comes to child pornography: those who produce and those who are viewers.

7

"And the producers obviously are child molesters. They are obviously involved in the actual making of children, forcing of children, encouraging children, whatever—however the circumstances are, to represent—to act out and portray themselves in horrific situations, and frequently represent the worst and the most dangerous type of offender.

"Nonproduction offenders, by contrast, encompass a wide range of individuals with varying degrees of culpability:  the occasional viewers with no particular sexual interest in children as compared to adults; then there are those viewers with pedophilic tendencies who are aroused by the images but do not possess the intent or capacity to engage in any sexual contact with a minor. And they go on to express that, you know, there are various types of people who involve themselves.

"Yet, when we look at the statute, if you employ, use, persuade, entice, or coerce a child to engage in explicit conduct, that's one section. If you promote the performance of sexual explicit conduct by a child, it's also a serious matter.

"And promoting means everything from procuring, which means to download and view, to those who are involved in transmitting, distributing, circulating, publishing, manufacturing, advertising. All these things are all included within the one section . . . .

"And if that child is under 14, it's life imprisonment whether it's you enticing and coercing the child, whether it's you who is forcing them into sexual positions and acts, or whether you're in the distribution center and you're making copies of this and spreading it out for wide public use or making websites that they sensationalize and collect massive amounts and make it easy for distribution to others or spreading of this information.

"It doesn't distinguish at all between those who simply view, and that kind of gets, then, to what the Court has to—is considering in this case."

Accordingly, the district court judge held:

"So, therefore, when you consider that . . . the statute of sexual exploitation of a child includes all these factors, all of which can involve life imprisonment, his role procuring or viewing becomes a very minor or significantly less than typical for this type of offense.

"So, therefore, I do find there is a mitigating factor . . . I find it to be substantial because of the fact that there is no distinction in the statute, and I find it to be compelling

because of the information provided through Dr. Barnett and through his history and the lack of criminal history to be all factors of compelling to go off-grid."

Here, we find substantial competent evidence supports the district court's conclusion that the harm in this case was less than typical for the offense. Under K.S.A. 2013 Supp. 21-6815(c)(3):

"If a factual aspect of a crime is a statutory element of the crime or is used to subclassify the crime on the crime severity scale, that aspect of the current crime of conviction may be used as an aggravating or mitigating factor only if the criminal conduct constituting that aspect of the current crime of conviction is significantly different from the usual criminal conduct captured by the aspect of the crime."

The court stated that Moxley's "role procuring or viewing [was] a very minor or significantly less than typical for this type of offense" because it compared Moxley's actions to other conduct prohibited by the statute, such as producing child pornography. Procurement is a factual aspect included in the statutory element of "promoting" child pornography under K.S.A. 2013 Supp. 21-5510(a)(4)—an element that also encompassed distributing, producing, manufacturing, and publishing child pornography, among other acts. See K.S.A. 2013 Supp. 21-5510(d)(2). Although the State points to evidence showing Moxley obtained hundreds of videos and images, including 163 videos within the six days prior to the execution of the search warrant, the court explained at the departure hearing its reason for determining that "nonproduction offenders," such as those who download and view child pornography, have "significantly less" culpability than other offenders who "promote" child pornography, such as by producing it. See K.S.A. 2013 Supp. 21-6815(c)(3).

In addition to its finding that the degree of harm or loss attributed to the current crime of convictions was significantly less than typical for such an offense, the district court relied on two other reasons for departing. When even one factor relied upon by the

9

district court is substantial and compelling, the departure sentence should be upheld. *State v. Blackmon*, 285 Kan. 719, 725, 176 P.3d 160 (2008). The district court stated that Moxley had no history of criminal activity, Moxley was not a pedophile or child molester, there was a "lack of concern of future commissions of these crimes," and there was no evidence that Moxley would be a danger to children or others.

Substantial competent evidence supports each of these stated reasons for departure. The presentence investigation report stated that Moxley's criminal score was I, which the court confirmed was "the lowest possible level" at the departure hearing. At the hearing, Dr. Barnett testified there was no reason to believe Moxley was a pedophile or sexual predator, and the risk that Moxley would reoffend was "very low." Furthermore, the court's articulated reasons are legally valid. See *State v. Rochelle*, 297 Kan. 32, 47-48, 298 P.3d 293 (2013) (district court did not abuse discretion in relying upon single departure factor of Rochelle's lack of criminal history in granting departure sentence); *State v. Grady*, 258 Kan. 72, 88, 900 P.2d 227 (1995) (district court's findings that defendant posed no threat to society and had no predisposition to commit further crimes are appropriate mitigating factors).

The State contends the evidence was not substantial because the district court "contradicted itself" with regard to that factor. The State claims the court made three inconsistent findings:  First, the district court judge stated, "I don't find him to be a pedophile or not to be a pedophile." Second, the judge stated that "without punishment associated with this type of offense, [Moxley] would not be resistant to whatever impulses he had to engage in viewing of child pornography." Third, the judge stated, "I do not believe that just simply therapy will be enough to curb this issue of attraction to child pornography."

But the district court made these statements as part of its explanation for why it imposed a prison sentence rather than probation—after it had determined that Moxley's

10

low risk of reoffending was a substantial and compelling reason to depart. Moreover, the fact that Moxley was a low risk for reoffending was not inconsistent with the court's finding that a prison sentence would further deter recidivism. In context, the comments identified by the State do not diminish the court's finding of substantial and compelling reasons to depart.

The district court did not abuse its discretion in determining that there were substantial and compelling reasons to depart from the Jessica's Law sentence to the sentencing grid. See *Spencer*, 291 Kan. at 807 (when record supports articulated departure reasons, this court reviews whether particular mitigating factor constituted substantial and compelling reason to depart for abuse of discretion). We affirm the district court's departure sentence.

Affirmed.

\* \* \*

Buser, J., concurring:  I concur in our court's judgment that the district court did not abuse its discretion in finding substantial and compelling reasons to depart from the Jessica's Law sentence to the sentencing grid. In particular, I agree with my colleagues that Moxley's lack of criminal history and Dr. Barnett's expert opinion that Moxley was not a pedophile or sexual predator, and his very low risk of reoffending were substantial and compelling reasons to depart in this case. I write separately, however, because I do not share my colleague's determination that under the circumstances of this case the harm caused by Moxley's criminal behavior was less than typical for the offense.

11