No. 101,635

STATE OF KANSAS, *Appellee*, v. THOMAS DALE PLOTNER,
*Appellant*.
(235 P.3d 417)

Opinion filed June
25, 2010.

*Heather Cessna*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*David Belling*, deputy county attorney, argued the cause, and *Terry J. Malone*, county attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Thomas D. Plotner appeals his conviction and sentence for three counts of rape of a child under the age of 14 in violation of K.S.A. 21-3502(a)(2). Prior to sentencing, he filed a motion to withdraw his plea to those charges, which was denied. The district court sentenced him on each count to life in prison with a 25-year mandatory minimum sentence under K.S.A. 21-4643, commonly known as Jessica's Law, but ordered the sentences to run concurrently to one another. This court has jurisdiction under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

These questions are raised on appeal: (1) Was Plotner entitled to withdraw his plea? (2) Did the district court abuse its discretion by failing to grant a downward durational departure? (3) Did the district court err by issuing a no-contact order? and (4) Is the statutorily-mandated lifetime postrelease supervision order constitutional?

We affirm Plotner's conviction and sentence except for the no-contact order, which the State concedes was an illegal sentence. We reject all other challenges Plotner raises in this appeal. The no-contact order is vacated. The remainder of Plotner's sentence is valid. See *State v. Post*, 279 Kan. 664, 112 P.3d 116 (2005) (vacating no-contact order; refusing to disturb remainder of sentence). We explain our decision below.

## FACTUAL AND LEGAL BACKGROUND

The State charged Plotner with seven off-grid crimes after two of his three step-daughters, all of whom were under the age of 14, alleged he had inappropriately touched them between July 2006 and April 2007. Plotner also admitted to having inappropriate sexual relations with all three. Those charges included three counts of rape of a child under the age of 14 in violation of K.S.A. 21-3502(a)(2); three counts of aggravated indecent liberties with a

child in violation of K.S.A. 21-3504(a)(3)(A); and one count of sexual exploitation of a child in violation of K.S.A. 21-3516(a)(5).

Plotner entered a plea agreement the day his arraignment was scheduled. In exchange for pleading guilty to the three rape charges, the State dropped the four other charges. There was no joint recommendation for sentencing. Plotner was free to seek a downward departure, and the State could seek the maximum sentence possible.

Approximately 6 weeks after entering his guilty plea, but prior to sentencing, Plotner asked to withdraw his plea and have a new attorney appointed to represent him. The district court assigned Plotner new counsel, who filed a motion to withdraw the guilty plea, claiming it was not knowingly or voluntarily made.

The same district court judge who presided over the initial plea proceeding also conducted the hearing on the motion to withdraw Plotner's guilty plea. Plotner testified, as did Linda Eckelman, the court-appointed counsel who had negotiated his plea agreement. The district court denied the motion based on its determination that Eckelman had adequately represented Plotner, and that Plotner had knowingly and voluntarily entered his guilty plea. The district court also noted there was overwhelming evidence of guilt. While it is unnecessary to recite all of the evidence here, it is sufficient to say it included Plotner's videotaped confession, DNA evidence, and a videotape depicting Plotner engaging in sex with the eldest victim.

Plotner then filed a motion seeking a competency evaluation, which was granted. The evaluation reflected Plotner had an I.Q. of 91, an average score, and was suffering some mild to moderate symptoms of depression due to his circumstances.

A motion for a downward durational sentencing departure was filed. In that motion, Plotner asserted the following mitigating circumstances: he was 30 years old; he had no prior felony convictions; at the time of the crimes he was under stress related to the breakup of his marriage; and his intellectual abilities were limited, affecting his ability to comprehend the seriousness of his conduct. At the sentencing hearing, Plotner also asked the district court to consider the mental health evaluation, the motion to depart, letters

he had written to the court, his confession to police, and his statement attached to the presentence investigation report. It was argued these showed Plotner had a very limited, and almost childlike, understanding regarding the seriousness of the crimes he committed.

The district court found Plotner had failed to present substantial and compelling reasons to depart from the statutorily mandated sentence of 25 years to life for each count. But rather than run the three sentences consecutively, as the State had requested, the district court ordered Plotner's sentences to run concurrently. The district court also ordered restitution, lifetime postrelease supervision, payment of some costs, and that Plotner have no contact with the victims. Plotner timely appealed.

## ANALYSIS

*Plotner's motion to withdraw his guilty plea was properly denied*

Whether Plotner's guilty plea may be withdrawn is controlled by K.S.A. 22-3210(d), which provides: "A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." This court will not disturb a district court's decision to deny a presentence motion to withdraw a plea unless the defendant demonstrates the district court abused its discretion. Defendants bear the burden of establishing an abuse of discretion. *State v. White*, 289 Kan. 279, 284-85, 211 P.3d 805 (2009). " 'Judicial discretion is abused when no reasonable person would take the view adopted by the district judge.' " *State v. Ortega-Cadelan*, 287 Kan. 157, 165, 194 P.3d 1195 (2008) (quoting *State v. Engelhardt*, 280 Kan. 113, 144, 119 P.3d 1148 [2005]).

Plotner argues he did not knowingly or voluntarily plead guilty as K.S.A. 22-3210 and this court's jurisprudence require. In response, the State argues the contrary, but also claims Plotner failed to adequately brief whether the statutory conditions for accepting a guilty plea were met. An issue not briefed or raised incidentally without argument is deemed abandoned. *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008). But Plotner's appellate brief

adequately addressed the issue. We reject the State's latter argument without further comment.

When evaluating whether a defendant demonstrates "good cause" sufficient to withdraw a guilty plea under K.S.A. 22-3210(d), factors to consider may include whether: (1) the defendant was represented by competent counsel; (2) the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) the plea was fairly and understandingly made. *White*, 289 Kan. at 285; see *State v. Sanchez-Cazares*, 276 Kan. 451, 454, 78 P.3d 55 (2003). In reviewing the record, we hold the district court properly considered whether there was good cause to permit Plotner to withdraw his plea.

At the hearing on the motion to withdraw the guilty plea, Plotner testified his first court-appointed attorney (Eckelman) never visited him in jail. Plotner claimed Eckelman only met with him twice before his plea, and each meeting was only 15 to 20 minutes in duration. He testified Eckelman never reviewed the police reports with him and refused to watch a relevant videotape. He testified he never asked about a plea agreement, nor had he and Eckelman discussed one prior to the day it was presented to him. Plotner alleged he had no notice of the arraignment date and, upon arriving at court, was surprised to see Eckelman and the prosecutor discussing a plea bargain. After the prosecutor left, Plotner said he and Eckelman discussed the plea for 10 minutes.

Eckelman, who by the time of the withdrawal hearing had been replaced by new court-appointed defense counsel, also testified. She contradicted Plotner's account of her representation. She testified she visited Plotner in jail and met with him three times, two of which meetings were approximately an hour in length. She also testified she watched the videotape and discussed with Plotner the overwhelming weight of evidence against him, specifically, that the videotape depicted Plotner and a victim having sex.

Eckelman also stated that from their initial meeting Plotner raised the possibility of a plea and that he had always been extremely remorseful, wishing only to "get this over with." Her version of the plea negotiation also differed from Plotner's. She said after he arrived at court that morning, she requested that the pros-

ecutor discuss the plea with them both to ensure she had the details correct. She estimated she and Plotner met for an hour before he entered his guilty plea.

The plea hearing transcript supports Eckelman's version of the events, showing that she explained Plotner's sentence to him and inquired whether he understood her explanation. She also asked whether he needed more time to make his decision, to which he answered no, and whether he had had access to all the evidence in the case except the videotape, to which he answered yes. She then addressed his mental capabilities. Plotner indicated he was of sound mind and was a high school graduate who had worked in a local company's shipping department for the last 11 years.

The plea hearing transcript also shows the district court made its own inquiry of Plotner as K.S.A. 22-3210 requires. The district court asked him whether he understood he had the right to plead not guilty, receive a jury trial, confront witnesses, and potentially be found not guilty if the State did not meet its burden of proof; whether he understood there was no difference in his maximum punishment for entering a guilty plea; whether he felt like he was under any coercion, threat, force, or timetable; whether he understood the possible sentence; whether he was pleading guilty because he believed he was guilty; and whether he understood the consequences of his plea. As to each inquiry, Plotner indicated he understood and answered he was pleading guilty because he believed he was guilty. This exchange also confirmed Plotner had previously received a copy of the complaint, a reading of the charges subject to the plea agreement, and an explanation that the charges were off-grid crimes requiring a life sentence.

In denying the motion to withdraw the guilty plea, the district court concluded Eckelman adequately represented Plotner and Plotner made his plea knowingly and voluntarily. The district court based the latter conclusion on evidence that Plotner was informed of all the charges and knew which counts would be dismissed in exchange for a plea and was informed of the possible sentence.

The district court found it was clear from the plea transcript Plotner knew his plea would result in a 25-years-to-life sentence. The district court also noted an implication in the record that Plot-

ner viewed the plea as beneficial because it would save his step-daughters the painful experience of testifying. The transcript reflects the district court properly considered whether there was good cause for withdrawal and found none. Further, reasonable people could agree with the district court's assessment.

We hold the district court did not abuse its discretion by denying Plotner's motion to withdraw his guilty plea.

*Plotner's motion for a downward durational departure*

The sentencing statute in this case mandates a life sentence with a minimum of 25 years served "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 21-4643(a) and (d). But the statute also provides a nonexclusive list of mitigating factors district court judges may consider when determining whether there are substantial and compelling reasons for departure. K.S.A. 21-4643(d)(1)-(6). An appellate court reviews "a district court's determination of whether mitigating circumstances presented under [K.S.A. 21-4643] are substantial and compelling" for an abuse of discretion. *Ortega-Cadelan,* 287 Kan. at 165.

Plotner argues the following mitigating circumstances: (1) He took responsibility for his actions; (2) he showed deep remorse for his actions; (3) he purposefully pled guilty in order to save the victims from testifying at trial; (4) the sexual acts between him and the oldest victim were not committed forcefully; (5) he had no significant criminal record prior to this crime—specifically, no prior sexually-motivated convictions; (6) he was relatively young at the time the crimes were committed; and (7) even with the requested downward departure, he would serve a considerable sentence.

A district court judge is required to undertake a two-step analysis when determining whether a departure motion should be granted. A district court judge first reviews the mitigating circumstances, and then determines whether substantial and compelling reasons warrant a departure. *State v. Spotts,* 288 Kan. 650, 655, 206 P.3d 510 (2009) (citing *Ortega-Cadelan,* 287 Kan. at 164). Specificity by the district court judge when making his or her determination is

not statutorily required, though specificity is required if the district court judge decides departure is warranted, *i.e.*, in those circumstances "the judge shall state on the record . . . the substantial and compelling reasons for departure." K.S.A. 21-4643(d).

Here, after considering the circumstances Plotner advanced, which included: listening to arguments made by his attorney, listening to a statement by Plotner, and reviewing the motion for downward durational departure; listening to the State's arguments; and reading the victims' statements, the district court concluded Plotner had failed to present substantial and compelling mitigating circumstances. This was a sufficient evaluation.

For its explanation, the district court stated it could not grant a downward durational departure without substantial and compelling reasons to do so. Further, it noted the "reprehensible nature" of Plotner's crimes and the legislature's intent to tie Jessica's Law sentences to the psychological damage children forced into sexual relationships suffer. The district court concluded that it found no reason to depart, but did order Plotner's sentences to run concurrently. While the district court did not explain its conclusion as thoroughly as the district courts in *Spotts* and *Ortega-Cadelan*, its explanation satisfies K.S.A. 21-4643(a) and (d).

Reasonable people could agree with the district court's evaluation and conclusion. The district court did not abuse its discretion when it denied Plotner's motion for a downward sentencing departure.

*The no-contact order constituted an illegal sentence*

Plotner next argues the no-contact order the district court imposed is an illegal sentence because it fails to conform with K.S.A. 21-4603d(a), the statute governing authorized dispositions for those found guilty of a crime. He argues this failure requires remand for resentencing.

An illegal sentence is one imposed by a court without jurisdiction, a sentence which does not conform to the statutory provision, either in character or the term of the punishment authorized, or a sentence which is ambiguous with regard to the time and manner in which it is to be served. *State v. Davis*, 283 Kan. 767, 769, 156

P.3d 665 (2007). The State concedes the sentence is illegal but argues resentencing is not required. We agree with the State.

K.S.A. 21-4603d(a) gives district courts a number of sentencing options. Some authorized dispositions include prison, jail, fines, or probation. The statute also permits the district court to impose "appropriate combination[s]" of specific dispositions. K.S.A. 21-4603d(a)(11). But when asked to interpret the statute, this court has held sentencing a defendant to prison and imposing a no-contact order, *i.e.*, a probation condition, was an inappropriate combination of the statutorily authorized dispositions and constituted an illegal sentence. *State v. Post*, 279 Kan. 664, 112 P.3d 116 (2005) (adopting position that prison and probation, dispositions permitted under K.S.A. 21-4603d(a), are mutually exclusive). To remedy this illegality, the *Post* court vacated the offending no-contact order, but it did not disturb the sentence's remaining valid portions. 279 Kan. at 669.

*Post* controls this issue. The district court sentenced Plotner to incarceration with lifetime postrelease supervision and imposed a no-contact order. The relevant portions of K.S.A. 21-4603d(a) remain unchanged. See L. 2009, ch. 132, sec. 8. As Plotner argues, the no-contact order was an illegal sentence. But the State correctly contends *Post* provides the appropriate remedy. The illegal no-contact condition of Plotner's sentence is vacated; the remaining portions of his sentence are valid and remain in force.

*Constitutional challenge to lifetime postrelease supervision is unpreserved*

Plotner argues for the first time on appeal that sentencing a defendant to lifetime postrelease supervision as provided for in K.S.A. 22-3717(d)(1)(G) constitutes cruel or unusual punishment in violation of the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights.

Generally, parties may not raise constitutional issues for the first time on appeal. But this general rule has three exceptions that enable appellate review, including: "(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is

necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason." *Ortega-Cadelan*, 287 Kan. at 159 (citing *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 [1967]).

In *Ortega-Cadelan*, this court reviewed fully the applicability those exceptions have in the context of a defendant's challenge under § 9 of the Kansas Constitution Bill of Rights to a life sentence imposed under K.S.A. 21-4643(a)(1) when that challenge was raised for the first time on appeal. The court noted that whether a life sentence under that statute was cruel or unusual punishment must be analyzed using the three-prong test set out in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978). *Ortega-Cadelan*, 287 Kan. at 160-61. Those considerations are:

"(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

In reviewing those factors, the *Ortega-Cadelan* court determined that a *Freeman* analysis necessarily intertwines both factual and legal questions, and further noted that no single legal consideration under *Freeman* controls the outcome. 287 Kan. at 161. Accordingly, the *Oretega-Cadelan* court determined it needed a record developed at the district court level to address the factual aspects embedded within the *Freeman* analysis in order for the defendant to properly challenge his or her life sentence under K.S.A. 21-4643(a)(1).

Plotner acknowledges this court has consistently held none of the *Pierce* exceptions apply to his issue and that the issue presents mixed questions of law and fact. See, *e.g.*, *State v. Oehlert*, 290 Kan. 189, 191, 224 P.3d 561 (2010); *State v. Easterling*, 289 Kan.

470, 485-87, 213 P.3d 418 (2009); *State v. Mondragon*, 289 Kan. 1158, 1162-65, 220 P.3d 369 (2009); *State v. Spotts*, 288 Kan. 650, 652-54, 206 P.3d 510 (2009); *Ortega-Cadelan*, 287 Kan. at 159-61.

Plotner urges this court to reverse its precedent and consider the issue here, claiming his trial record is factually sufficient to address the issue. We find otherwise. Because this issue was not raised below, the record is devoid of the facts this court needs to evaluate it, *i.e.*, the facts required to apply *Freeman*. For the reasons explained in *Oehlert, Easterling, Mondragon, Spotts*, and *Ortega-Cadelan*, Plotner cannot raise this issue for the first time on appeal.

Affirmed in part and reversed in part.

DAVIS, C.J., not participating.
LEBEN, J., assigned.