NOT DESIGNATED FOR PUBLICATION

No. 125,633

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS A. HARRISON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; JASON GEIER, judge. Submitted without oral argument. Opinion filed June 21, 2024. Affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Carolyn A. Smith*, assistant district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: After Thomas A. Harrison pled guilty to one count of rape under a plea agreement, he filed a presentence motion to withdraw plea. After an evidentiary hearing, the district court denied Harrison's motion. Subsequently, Harrison filed a motion for downward durational departure. The district court also denied Harrison's departure motion and imposed a hard 25 life sentence. On appeal, Harrison challenges the denial of his presentence motion to withdraw plea and the denial of his downward durational departure motion. Based on our review of the record on appeal, we find that the district court did not err in denying Harrison's motions. Thus, we affirm.

FACTS

On February 21, 2020, the State charged Harrison with one count of rape, one count of aggravated criminal sodomy, and one count of aggravated indecent liberties with a child under the age of 14. The district court appointed three different attorneys to represent Harrison. However, each of them either withdrew or were removed after Harrison filed motions for new counsel. Finally, in May 2021, the district court appointed KiAnn Caprice to represent Harrison.

The district court scheduled Harrison's case to proceed to trial on April 4, 2022. At a pretrial hearing held on March 30, 2022, the parties announced that they had reached a plea agreement earlier that day. In the written plea agreement, Harrison agreed to plead guilty to one count of rape and the State agreed to dismiss the aggravated criminal sodomy and aggravated indecent liberties with a child charges.

No agreement was reached regarding sentencing. Even so, the plea agreement did allow for Harrison to request a departure and for the State to oppose that request. Harrison placed his initials next to every paragraph of the written plea agreement and signed the document indicating that he understood its terms as well as the rights he would be waiving by entering a plea.

At the plea hearing, the prosecutor orally informed the district court of the terms of the plea agreement, and Caprice provided the signed written plea agreement to the district court. The district court then went over the terms of the plea agreement with Harrison, informed him of his rights, confirmed that he understood the terms of the agreement, and made sure that he wanted to move forward with his plea. After the district court finished speaking with Harrison, the prosecutor stated the factual basis for the plea on the record. In doing so, the prosecutor explained that Harrison—born in 1987—had engaged in sexual acts with a child on three occasions from July 2012 to May 2019.

The district court then addressed Harrison's state of mind by confirming that he was not under the influence of alcohol, drugs, or medication and that he had not been threatened or coerced into entering into the plea agreement. The district court again confirmed that Harrison had read and understood the plea agreement, that he went over it with his attorney, and that he was the person who initialed and signed the written document. After doing so, the district court accepted Harrison's guilty plea and adjudged him guilty of one count of rape. As agreed, the State dismissed the aggravated criminal sodomy and aggravated indecent liberties with a child charges.

Before sentencing, Harrison filed a pro se motion to withdraw his plea. In his motion, Harrison alleged several reasons why he believed he should be allowed to withdraw his guilty plea. Specifically, Harrison alleged that (1) he was not represented by competent counsel; (2) his attorney coerced him into taking the plea; (3) he did not make the plea freely and understandingly because of a change in his medication and pressure from his attorney; (4) he was innocent of the crime; (5) he suffered from depression and anxiety; and (6) the State engaged in coercive tactics. Two days later, the district court allowed Caprice to withdraw as Harrison's counsel and appointed James Spies to represent him on his motion to withdraw plea.

On June 28, 2022, Spies filed a motion for downward durational departure on Harrison's behalf. In the motion, Harrison argued that there were substantial and compelling reasons to depart from the presumptive sentence under Jessica's Law. In particular, Harrison alleged the following factors: (1) A lack of criminal history; (2) he had accepted responsibility for his crime; (3) he was of average risk of recidivism and had amenability to treatment; and (4) research indicated that the length of incarceration alone does not decrease the risk of recidivism.

The district court held an evidentiary hearing on July 18 and August 5, 2022. The district court first took up Harrison's motion to withdraw plea. Harrison's counsel, Spies,

began by informing the district court that Harrison was abandoning his allegation of coercive tactics by the State. Spies then called Harrison to testify in support of his motion to withdraw plea. In addition, Spies introduced one exhibit—a thumb drive containing medical records from the Shawnee County Department of Corrections—that was admitted into evidence.

Notwithstanding his motion for downward durational departure in which Harrison claimed to have accepted responsibility for his actions, he testified that he was innocent of the crime of rape and did not commit the alleged acts against the minor victim. Harrison testified that Caprice had provided him with more than 8,000 pages of discovery about a year before he entered his plea. He added that he went over these documents by himself and discussed them with Caprice. In addition, he testified that Caprice hired an investigator who met with him at the jail to review the documents. Harrison admitted that he was mostly satisfied with Caprice's representation until they began discussing the possibility of entering a plea.

Harrison claimed that he lacked the ability to understand his plea because of ADHD, anxiety, and depression. According to Harrison, he had a mental breakdown at the Shawnee County Jail during the summer of 2021, and was prescribed two medications for anxiety and depression. Harrison testified that it was his understanding that the jail stopped providing one of the medications in January 2022. So, he was taking only one of the medications after that time and—as a result—his anxiety increased.

Harrison also testified that he did not inform Caprice about his change in medication or that this change made it difficult for him to focus during his meetings with her. He suggested that the change in medication impacted his ability to appropriately evaluate whether it would be best to go to trial or to enter a plea. Harrison added that he proposed that Caprice seek a plea agreement after she talked to him about a confession he had allegedly made to his ex-wife—who is the minor victim's mother—using Facebook

4

Messenger. Harrison evidently told Caprice he did not send the messages, but he could not identify anyone else who had access to his Facebook account who may have sent the messages.

Harrison testified that Caprice had initially been "really helpful, [and] really engaging" until they began preparing for trial. He testified that during a meeting at the jail on March 24, 2022, she became "very loud, firm and aggressive" when she told him that a jury would likely convict him after seeing the Facebook messages. According to Harrison, the conversation lasted for about two hours and at the end he agreed to allow Caprice to contact the State about the possibility of a plea offer. Upon receiving the plea offer from the State, Caprice allegedly told Harrison she would not propose a counteroffer and he felt like there was no choice but to accept the plea.

When asked why he entered the guilty plea if he maintained his innocence, Harrison stated:

> "The fact that she bullied me, yelled at me, used aggressive body language, made me feel hopeless to the fact that there would be no point in going to trial. That if I entered a guilty plea, that I could possibly still have my mom around and still have most of my family, and I would actually be able to rebuild."

Harrison claimed he would not have accepted the State's plea offer but for Caprice pressuring him to do so. He also stated that he would not have accepted the offer had he been on both of the medications originally prescribed at the jail. Harrison admitted that he did not tell the district court about these things but suggested this was because he was "afraid of retaliation" from the court, the prosecutor, or Caprice. He also testified that it did not cross his mind to tell the district court about his medication change at the plea hearing.

5

Next, the State presented the testimony of Caprice and her private investigator, Ed Brunt. Caprice testified that she did not feel that Harrison's mental health issues rose to the level of requiring a competency evaluation. She also stated that Harrison was able to participate in his defense. Likewise, she testified that during the meeting in which they discussed the plea offer, Harrison did not appear to be "overly anxious" and he remained calm throughout the meeting.

Caprice also testified about the Facebook messages sent from Harrison to his ex-wife. In these messages, Caprice testified that Harrison admitted touching the minor victim and stated that he got sexually aroused when changing his biological daughter's diaper. Caprice explained that she advised Harrison that she did not believe she could overcome such incriminating evidence at trial and that she would not be able to argue that someone else sent the messages without establishing who else may have had access to his Facebook account. Caprice acknowledged that she has a "strong personality" and "understand[s] that a lot of people with weaker constitutions may be afraid of me." Caprice testified that on the day of the plea hearing Harrison did not exhibit any signs of anxiety or confusion when agreeing to enter his plea.

Moreover, Brunt testified about his involvement in various meetings between Harrison and Caprice. He testified that Harrison was able to assist him in his job as a private investigator. Brunt explained that he was also present at the meeting between Harrison and Caprice on March 24, 2022. He testified that Harrison appeared to be calm during this meeting, and that Caprice was not overly aggressive with him. In addition, Brunt corroborated Caprice's observations of Harrison on the date of the plea hearing. In particular, Brunt recalled that on the date of the plea hearing, Harrison stated that accepting the plea was in his best interest.

After considering the motion, evidence, testimony, and arguments of the parties, the district court denied Harrison's motion to withdraw plea. In doing so, the district court

6

found that Harrison needed to show good cause to withdraw his plea. The district court explained that it would look to the three factors laid out in *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), to analyze whether Harrison had shown good cause to withdraw his plea.

The district court then evaluated each factor:

"The three *Edgar* factors [are] whether the defendant was represented by competent legal counsel, whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of, and whether his plea was fairly and understandably made.

"The Court will note, and as the parties have appropriately pointed out, the *Edgar* factors are not to be applied mechanically, exclusive of the other factors. I will go through the *Edgar* factors.

"Regarding competent legal counsel, Ms. Caprice filed multiple motions, including motions to exclude evidence and to admit evidence. Counsel, and Ms. Caprice, argued those motions thoroughly and ultimately, it was the Court's decision on what evidence was to be admitted at trial. And the Court will find that Ms. Caprice cannot be held responsible for the decisions the Court ultimately made.

"The defendant admitted that he—in his written motion, that he met with his attorney several times. During Ms. Caprice's testimony, she noted there were several times that she met with the defendant. Mr. Brunt testified that he met with Ms. Caprice and the defendant six times when all three of them were there.

"The defendant claimed in his motion that only minimal effort was made to refute Facebook evidence. The Court will find that allegation not to be credible. Ms. Caprice filed a motion and argued the motion at a motion hearing. Ultimately, the Court denied that motion.

"Ms. Caprice testified that she reviewed trial and trial procedure. She inquired of the defendant as to what questions he wanted asked of the jury and witnesses. They

7

talked about his potential defenses. His right to testify, and what witnesses that he wanted called. The Court finds those statements by Ms. Caprice to be credible.

"Ms. Caprice testified that the defendant told her that she had done a good job. Mr. Brunt testified that he witnessed the defendant tell Ms. Caprice that he was satisfied with her representation. The defendant notes in section 6 of his written plea agreement, he was fully satisfied with Ms. Caprice's representation of him. He initialed that section in the written plea agreement. He signed that document.

"And additionally, the Court inquired at the plea whether the defendant was represented by competent counsel and whether he was satisfied with Ms. Caprice. So regarding the first *Edgar* factor, the Court is going to find that the defendant was represented by competent legal counsel.

"The second factor is whether the defendant had been coerced into entering his plea, and using the exact words from the defendant's motion, he claimed that he was coerced by Ms. Caprice and specifically that, quote, 'her demeanor and tone,' end quote, were, quote, 'coercive and threatening,' end quote. And that the defendant, Mr. Harrison, was coerced within a single day.

"Mr. Harrison himself testified that Ms. Caprice used a loud, firm, and aggressive voice. Ms. Caprice testified that she did not raise her voice to the defendant, quote, 'not one time,' end quote. Never called him a profane or demeaning word. She testified that the room in the jail in which they met, specifically with the plea, was room 206 that has a large table that is at least four feet long. That she never addressed him, never pointed at him.

"Mr. Brunt corroborated that testimony of Ms. Caprice. He testified that he went with and was in the room. That Ms. Caprice never screamed, yelled, at or bullied the defendant. That includes both the March 24th meeting and the March 30th meeting in holding.

"The coercive behavior that allegedly took place on March 24th, the Court will note that there was a six-day lapse in time between the alleged coercive behavior and

8

when the defendant actually entered his plea on March 30th. So the Court will take into account that there was a significant period of time between when the coercive behavior allegedly took place and when the defendant actually took his plea.

"Court will note that the defendant had no problem speaking up for himself and demanding that his previous attorneys at Tenopir and Huerter be removed and that a new lawyer be appointed to him when Tenopir and Huerter suggested that he take a plea. That was a pro se motion filed by the defendant on November 21, 2020.

"In April of 2021 with another attorney, the defendant threatened to file ethical complaints and again wanted new court-appointed counsel and, again, the Court will note that the defendant apparently had no problem speaking up for himself or standing up for himself at those times.

"In the written plea agreement, the defendant said he was not coerced or threatened in any way, and that he was entering into the plea of his own free will. Under questioning by the Court at the plea hearing, he said he was not threatened or coerced, that he was entering the plea of his own free will.

"During the Court's observations, there was never any indication whatsoever the defendant did not know what he was doing, that he was suffering from mental illness or mental or physical hardship of any kind. He always participated meaningfully in those hearings and participated in the case. He even filed some pro se pleadings. He answered the questions of the Court on that plea hearing date appropriately and competently.

"The Court finds the testimony of Ms. Caprice and Mr. Brunt to be credible. Court does not find the defendant's testimony to be credible regarding being coerced into his plea.

"Regarding the third *Edgar* factor being freely and understandably made, he never articulates—the defendant never specifically articulates in his motion exactly what he did not understand. He admits in his motion that it was contrary to what he said at the plea hearing.

9

"Ms. Caprice testified that the defendant never mentioned anything to her about medication or that he was overly anxious. She testified that the defendant asked several questions and reviewed a lot of paperwork. Court finds her testimony to be credible.

"Mr. Brunt testified that Mr. Harrison was calm and engaged in the plea negotiations, I'm paraphrasing here a bit, and that it was actually the defendant that wanted to initiate plea discussions. Again, the Court will find Mr. Brunt's testimony to be credible.

"The defendant claims he was not competent at the plea hearing. There is no evidence of this, other than the defendant's uncorroborated testimony. The Court has reviewed Defense Exhibit A. While it contains the defendant's health history while incarcerated, there's nothing in it to show that the defendant was not competent and that he did not understand the nature of the charges against him, or he could not assist in his own defense.

"There have been no witnesses, experts, or mental health reports to indicate that the defendant was not competent when he entered his plea. Again, all we have is the defendant's uncorroborated testimony, which the Court does not find credible, and Defense Exhibit A, which the Court does not find supports the defendant's claim that he was not competent to enter this plea.

"The defendant gave clear, coherent answers to all the Court's questions at the time of the plea. Based upon the Court's own observations on that date, there is absolutely no indicia that the defendant was not fully aware of the charges against him and the maximum possible punishment, and the rights he was waiving by entering the plea."

The district court then found:

"Regarding the other two factors listed in the motion, the actual innocence claim, Court will acknowledge that a claim of actual innocence may support a presentence request to withdraw a plea. That's *State v. Garcia*, 295 Kan. 53. That is a 2012 case. The Court finds he does not present a credible claim. The assertion of the defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his

plea of guilty. He has failed to make any factual argument that supports a legally cognizable defense. And what the Court now deems to be simply a case of buyer's remorse is not sufficient to swing this factor in his favor.

"He agreed with the factual basis provided in open court by the prosecution, at which he admitted to the allegations made by the victim and acknowledged the Facebook messages that would corroborate the same.

"In the fifth factor regarding mental health, the defendant specifically claims depression and anxiety prevented him from making a knowing plea. But again, the only evidence we have is the defendant's uncorroborated testimony and Defense Exhibit A, which contains jail medical records. And the Court will acknowledge that Defense Exhibit A indicates that the defendant was in fact suffering from depression and anxiety. But those records certainly do not show or even remotely indicate that the defendant was not competent to enter the plea on March 30th.

"In addition, there have been no other witnesses or medical personnel to give testimony as to the defendant's mental health status generally, or his condition on March 24th or March 30, 2022. Both Ms. Caprice and Mr. Brunt stated they had no concerns regarding the defendant's mental health, that he was fully engaged in his defense and his case, as well as plea negotiations. The Court finds their testimony to be credible.

"The answers given by the defendant in his plea hearing, as well as the Court's own observations on the plea date, indicated that the defendant was in command of his faculties and cognizant of the plea proceedings. The Court finds the defendant's testimony he was not competent is not credible, and that Defense Exhibit A is insufficient for this Court to find the defendant was not competent during his case, and especially during the time of his plea.

"So with that, the Court, after reviewing the pleadings, the court file, the evidence presented, in addition to the testimony of Ms. Caprice and Mr. Brunt, which the Court does find to be credible, as well as the testimony of the defendant, which the Court does not find to be credible, the Court would find the defendant has not shown good cause to withdraw his plea. The motion is denied."

11

After denying Harrison's motion to withdraw plea, the district court moved on to consider his motion for downward durational departure. In addition to hearing the arguments of counsel, the district court provided Harrison with an opportunity to make a statement. Although he had claimed actual innocence as one of the grounds on which he asked to withdraw his plea, Harrison told the court that he took full responsibility for his crimes, and he expressed "deep and regretful remorse" for his actions.

In denying Harrison's motion for downward durational departure, the district court explicitly stated on the record that it was only considering the mitigating factors asserted. After reviewing the mitigating factors alleged by Harrison, the district court determined that they did not rise to the level of substantial and compelling reasons to depart from the presumed Jessica's Law sentence. Consequently, the district court imposed a Jessica's Law sentence of life imprisonment without the possibility of parole for 25 years.

Thereafter, Harrison filed a timely notice of appeal.

ANALYSIS

*Presentence Motion to Withdraw Plea*

On appeal, Harrison first contends that the district court erred in denying his presentence motion to withdraw plea. Harrison argues that the district court erroneously applied the constitutional competency to stand trial test when analyzing the third *Edgar* factor. In response, the State argues that the district court appropriately applied the good cause standard in evaluating the third *Edgar* factor when it determined that Harrison's plea was fairly and understandingly made.

Generally, we review a district court's decision to deny a presentence motion to withdraw plea for an abuse of discretion. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d

12

43 (2020). A district court abuses its discretion when: (1) a ruling is based on an error of law; (2) a ruling is based on an error of fact; or (3) no reasonable person would take the view adopted by the judge. *State v. Powell*, 308 Kan. 895, 902-03, 425 P.3d 309 (2018). As the party asserting an abuse of discretion, Harrison bears the burden to prove the district court erred in denying the presentence motion to withdraw his guilty plea. See *Frazier*, 311 Kan. at 381.

Kansas law provides that "[a] plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 22-3210(d)(1). To determine whether a defendant has demonstrated good cause to withdraw their plea before sentencing, a district court generally looks to three factors from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006), known as the *Edgar* factors: (1) Whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Frazier*, 311 Kan. at 381.

Our Supreme Court has directed that these factors should not "be applied mechanically and to the exclusion of other factors." *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). Rather, the *Edgar* factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the "court should not ignore other factors that might exist in a particular case." *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

Here, Harrison only challenges the district court's ruling on the third *Edgar* factor. He does not challenge the district court's ruling on the first and second *Edgar* factors or the other factors raised in his motion. Harrison argues that rather than applying the good cause standard to the third *Edgar* factor, the district court erroneously applied the more stringent constitutional competency to stand trial standard, as provided in *Dusky v. United*

13

*States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). In *Dusky*, the United States Supreme Court defined the constitutional competency to stand trial standard—which has been codified in K.S.A. 22-3301(a)—as requiring the defendant to have "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402.

Our Supreme Court has found that a district court abuses its discretion if it applies an incorrect legal standard when considering whether a defendant has shown good cause to withdraw their plea. See *State v. Herring*, 312 Kan. 192, 200-02, 474 P.3d 285 (2020) (finding an abuse of discretion where the district court explicitly applied the more stringent, constitutional *Strickland* standard to the first *Edgar* factor). In *State v. Bilbrey*, 317 Kan. 57, 66, 523 P.3d 1078 (2023), our Supreme Court found that the district court did not apply an incorrect legal standard to the first *Edgar* factor when—unlike the district court in *Herring*—it "did not cite *Strickland* or otherwise reference the constitutional standard for ineffective assistance of counsel. Rather, the court cited and applied the *Edgar* factors . . . ."

As for the third *Edgar* factor, our Supreme Court directed that "[t]he question of whether a plea is understandingly made must be weighed in light of certain constitutional and statutory requirements which attach to a defendant's plea." *Edgar*, 281 Kan. at 36. The *Edgar* court then referenced several constitutional requirements that align with the principles from the *Dusky* constitutional competency standard. The *Edgar* court stated that a constitutionally valid guilty plea by a criminal defendant must be voluntarily done with sufficient awareness of the factual circumstances and likely consequences, as well as being informed of the nature of the charges. As for statutory requirements, the *Edgar* court noted that a district court must comply with the due process requirements found in K.S.A. 2004 Supp. 22-3210(a) to accept a guilty plea. 281 Kan. at 36-37.

Although constitutional considerations are necessary to determine whether a guilty plea was fairly and voluntarily made, the third *Edgar* factor does not require a defendant to show that their plea was unconstitutionally made to establish good cause to withdraw their plea. See *State v. Aguilar*, 290 Kan. 506, 513, 231 P.3d 563 (2010). The Kansas Supreme Court has found that "[t]he *Edgar* factors do not transform the lower good cause standard of the statute's plain language into a constitutional gauntlet." 290 Kan. at 513.

In its ruling on Harrison's presentence motion to withdraw plea, the district court specifically referenced the third *Edgar* factor and properly stated that the plea needed to be fairly and understandably made. The district court's analysis of this factor focused on Harrison's understanding of the plea. As in *Bilbrey*, the district court did not cite *Dusky* or reference the constitutional competency standard. The district court referenced competency in its analysis only to address Harrison's claim in his motion that he was not competent when he entered his plea.

In his motion to withdraw plea, under the section for the third *Edgar* factor, Harrison stated that he "was not competent at the time that he pled guilty" and this "adverse mental condition" made him unable to freely make the plea. As for Harrison's competency claim, the district court stated:

> "The defendant claims he was not competent at the plea hearing. There is no evidence of this, other than the defendant's uncorroborated testimony. The Court has reviewed Defense Exhibit A. While it contains the defendant's health history while incarcerated, there's nothing in it to show that the defendant was not competent and that he did not understand the nature of the charges against him, or he could not assist in his own defense.

> "There have been no witnesses, experts, or mental health reports to indicate that the defendant was not competent when he entered his plea. Again, all we have is the defendant's uncorroborated testimony, which the Court does not find credible, and

15

Defense Exhibit A, which the Court does not find supports the defendant's claim that he was not competent to enter this plea.

"The defendant gave clear, coherent answers to all the Court's questions at the time of the plea. Based upon the Court's own observations on that date, there is absolutely no indicia that the defendant was not fully aware of the charges against him and the maximum possible punishment, and the rights he was waiving by entering the plea."

Harrison's argument that the district court used an erroneous legal standard in determining that his plea was fairly and understandably made is simply not supported by the record. As the Kansas Supreme Court directed, the district court evaluated whether Harrison's plea was voluntarily done with sufficient awareness of the factual circumstances and likely consequences, as well as whether Harrison was informed of the nature of the charges. See *Edgar*, 281 Kan. at 36-37. The district court found that Harrison's exhibit containing his health records did not show that he was unable to understand the plea he made.

Significantly, the same district court judge presided over both the plea hearing and the evidentiary hearing on the presentence motion to withdraw plea. As a result, the district court was in the position to note its own observations from the plea hearing. Specifically, the district court stated that it had observed Harrison's plea to be fairly and understandably made.

The district court also considered the testimony of Caprice and Brunt who both testified that Harrison appeared to understand his situation and freely made the decision to plead guilty before the plea hearing. Finally, the district court determined that Harrison's uncorroborated testimony about his mental state was not credible. Based on its own observations, the evidence, the testimony, and Harrison's motion, the district court properly concluded that Harrison's plea was fairly and understandably made. Therefore,

we find that the district court appropriately applied the facts to the law and did not abuse its discretion in denying Harrison's presentence motion to withdraw his plea.

*Motion for Downward Durational Departure*

Harrison also contends that the district court erred in denying his downward durational departure motion. He argues that he presented substantial and compelling reasons for departure from a Jessica's Law sentence. In doing so, he suggests that no reasonable person would have agreed with the district court's decision to deny his departure motion. In response, the State argues that the district court did not abuse its discretion in denying Harrison's departure motion because the mitigating factors asserted did not rise to the level of substantial and compelling reasons to depart.

We review the district court's determination of whether substantial and compelling reasons to depart exist in a Jessica's Law case for abuse of discretion. A district court abuses its discretion when: (1) a ruling is based on an error of law; (2) a ruling is based on an error of fact; or (3) no reasonable person would take the view adopted by the judge. *Powell*, 308 Kan. at 902-03.

Sentencing under K.S.A. 21-6627(a)(1)(B), known as Jessica's Law, requires a life sentence with a mandatory minimum prison term of 25 years for a defendant who is at least 18 years old and engages in sexual intercourse with a child under the age of 14. The statute, however, expressly provides a procedure for imposing a departure sentence from the mandatory minimum sentence. See K.S.A. 21-6627(d). For a first time Jessica's Law conviction, the district court may depart from Jessica's Law and impose a sentence under the Kansas Sentencing Guidelines Act if, "following a review of mitigating circumstances," the court finds substantial and compelling reasons to do so. K.S.A. 21-6627(d)(1); *Powell*, 308 Kan. at 902.

17

When considering a departure motion in a Jessica's Law case, the district court must first review the mitigating circumstances without weighing them against any aggravating circumstances. The district court need not affirmatively articulate that it refrained from weighing any aggravating circumstances. *Powell*, 308 Kan. at 908. Then, based on all the available facts, the district court determines whether the mitigating circumstances rise to the level of "'substantial and compelling reasons'" to depart from Jessica's Law. 308 Kan. at 913-14 (quoting *State v. Jolly*, 301 Kan. 313, 324, 342 P.3d 935 [2015]). The district court need not state the reasons a departure motion is denied in a Jessica's Law case. See K.S.A. 21-6627(d); *State v. Harsh*, 293 Kan. 585, 587, 265 P.3d 1161 (2011).

The Kansas Supreme Court has noted that "a judge does not sentence in a vacuum." *Jolly*, 301 Kan. at 324. As such, to determine whether substantial and compelling reasons to depart from a Jessica's Law sentence exist, "[t]he sentencing judge is to consider information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed, including the manner or way in which an offender carried out the crime." 301 Kan. at 324. Our Supreme Court has defined "'substantial'" as something "'real, not imagined; something with substance and not ephemeral.'" 301 Kan. at 323. Our Supreme Court has found that the term "'compelling' implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary." 301 Kan. at 323.

K.S.A. 21-6627(d)(2) provides a nonexclusive list of six mitigating factors a sentencing judge may consider when determining whether substantial and compelling reasons for departure from a Jessica's Law sentence exist:

> "As used in this subsection, 'mitigating circumstances' shall include, but are not limited to, the following:
> (A) The defendant has no significant history of prior criminal activity;

18

(B) the crime was committed while the defendant was under the influence of extreme mental or emotional disturbances;

(C) the victim was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor;

(D) the defendant acted under extreme distress or under the substantial domination of another person;

(E) the capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired; and

(F) the age of the defendant at the time of the crime."

In Harrison's motion for downward durational departure, he argued that four mitigating factors formed substantial and compelling reasons to depart from the Jessica's Law presumptive sentence: (1) His lack of criminal history; (2) his acceptance of responsibility which protected the victim from further trauma by testifying; (3) his average risk of recidivism and amenability to treatment; and (4) research has indicated that the length of incarceration alone does not decrease the risk of recidivism for sexual crimes.

At sentencing, the State asked the district court to deny Harrison's departure motion arguing that his lack of criminal history did not mitigate his actions here. Regarding Harrison's second proposed mitigating factor, the State contended that his acceptance of responsibility was negated by his motion to withdraw plea in which he claimed innocence of the crime. Additionally, the State argued that Harrison's alleged protection of the victim from further trauma by accepting a plea is not a mitigating factor because the victim was subpoenaed and appeared at the evidentiary hearing on the motion to withdraw plea. Regarding the third proposed mitigating factor, the State pointed out that Harrison's departure motion did not explain what type of treatment is available for him. The State also challenged Harrison's alleged average risk of recidivism because of the testimony about the incriminating Facebook messages Harrison sent to his

19

ex-wife. Thus, the State contended that none of the alleged mitigating factors rose to the level of a substantial and compelling reason to depart.

Harrison's counsel argued that based on the sex offender evaluation performed by Dr. Mitch Flesher, Harrison was of average risk of recidivism. Harrison's counsel explained that the evaluation indicated that the type of treatment Harrison would need was unavailable in the Kansas Department of Corrections. Harrison's counsel noted that Dr. Flesher's evaluation included a reference to a study that showed that there is no correlation between the length of incarceration and the likelihood of reoffending in sexual offender cases. Harrison's counsel also pointed out that although the victim was subpoenaed to the evidentiary hearing, she was released from her subpoena and did not have to testify. Additionally, Harrison's counsel asked the district court to consider that Harrison is an Army veteran, and he obtained legal custody of his three children over his ex-wife, the victim's mother, while serving in the Army.

After considering the motion, the parties' arguments, the evidence, and Harrison's statement, the district court denied his departure motion. The district court determined that the mitigating factors presented by Harrison did not rise to the level of substantial and compelling reasons to depart from the Jessica's Law sentence. The district court explicitly stated that it was only considering the mitigating factors, and Harrison does not argue that the district court improperly considered aggravating factors. Rather, he contends that no reasonable person would agree with the district court's decision.

Although a defendant's lack of criminal history alone can be enough to rise to the level of a substantial and compelling reason to depart in a Jessica's Law case, it is not automatically sufficient. See *State v. Rochelle*, 297 Kan. 32, 47-48, 298 P.3d 293 (2013) (finding that the sentencing court did not abuse its discretion in relying on defendant's lack of criminal history alone as a basis for granting downward departure); see also *Jolly*, 301 Kan. at 323 ("[E]ven though mitigating circumstances must be present for a finding

20

of substantial and compelling reasons, mitigating circumstances do not necessarily equal substantial and compelling reasons.").

The Kansas Supreme Court has upheld the denial of a downward departure motion in a Jessica's Law case despite the existence of similar mitigating factors. See *Powell*, 308 Kan. at 897, 918 (upholding denial of departure motion under Jessica's Law despite defendant's lack of criminal history, willingness to participate in rehabilitation, and cooperation during the investigation); *Harsh*, 293 Kan. at 587-88 (upholding denial of departure motion under Jessica's Law despite defendant's insubstantial criminal history, he did not dispute the seriousness of the crime, and he took responsibility by pleading guilty and saving his victims from testifying at trial); *State v. Plotner*, 290 Kan. 774, 780-81, 235 P.3d 417 (2010) (upholding denial of departure motion under Jessica's Law despite defendant's lack of prior sexually motivated convictions and his claim that he took responsibility to save his victims from testifying).

Upon a review of the record, a reasonable person could agree with the district court's decision to deny Harrison's departure motion. When providing the factual basis for the plea, the State explained that if the case proceeded to trial, it would put on evidence that Harrison inappropriately touched the victim on three occasions from July 2012 through May 2019. The district court also heard testimony that Harrison admitted the crime at hand to his ex-wife and admitted to having sexual feelings toward his biological daughter. These facts directly relate to the mitigating factor Harrison presented of his low risk of recidivism and amenability to treatment. Additionally, Harrison's decision to file a motion to withdraw his guilty plea in which he claims he is innocent of the crime—as well as his testimony at the hearing on that motion—undercuts his argument that he has accepted responsibility and protected the victim.

For these reasons, we find that the district court's determination that Harrison's proposed mitigating factors did not rise to the level of substantial and compelling reasons

to depart is reasonable. Instead, we find that the district court did an admirable job in considering and explaining its reasons for denying the downward durational departure motion as well as the presentence motion to withdraw plea. Thus, we conclude that the district court did not abuse its discretion in denying Harrison's motions or in imposing his sentence.

Affirmed.