NOT DESIGNATED FOR PUBLICATION

No. 126,796

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSHUA MANUEL PENABAZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; KENDRA S. LEWISON, judge. Submitted without oral argument. Opinion filed January 31, 2025. Affirmed.

*Darby VanHoutan*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and COBLE, JJ.

PER CURIAM: Joshua Manuel Penabaz pleaded guilty to two counts of aggravated indecent liberties with a child under 14 years of age by an offender 18 years of age or older. Before sentencing, Penabaz filed a motion for a downward durational departure. The district court denied the motion, ruling that Penabaz had not presented substantial and compelling reasons to depart and sentenced him to concurrent, presumptive life sentences. On appeal, Penabaz argues that the district court abused its discretion by denying his motion for a departure. Because the district court did not act unreasonably in sentencing Penabaz, we affirm his sentences.

1

In Spring of 2022, the State charged Penabaz with 27 counts of off-grid sexual abuse of three different children. The crimes were committed over a span of 12 years with the girls' ages ranging from 1 year to 13 years old at the time of the abuse. The charges included 11 counts of rape, 8 counts of aggravated criminal sodomy, and 8 counts of aggravated indecent liberties with a child.

Penabaz pleaded guilty to one count of aggravated indecent liberties with a child against Victim 1 and one count of aggravated indecent liberties with a child against Victim 2, both off-grid person felonies. The plea agreement stated that the penalties for each crime were a mandatory minimum sentence of life in prison with the eligibility for parole after 25 years. Under the terms of the agreement, the State would recommend the presumptive life sentence for both counts to be served concurrently.

After his plea and before the sentencing hearing, Penabaz filed a motion for a downward durational departure. The motion enumerated several factors for why substantial and compelling reasons existed for the district court to depart including:  (1) Penabaz' limited criminal history; (2) that he committed his crimes under the influence of extreme mental or emotional disturbances; (3) his low risk for recidivism; (4) mental health treatment would be of more benefit to him than prison; (5) his age; and (6) his poor health including a diabetes diagnosis. Additionally, the motion summarized highlights from a psychological evaluation that found that Penabaz himself had been subject to sexual abuse at a young age and, as a result, he suffered from mental health issues. The evaluation supported Penabaz' claim that he was at low risk for reoffending.

At the sentencing hearing, the district court began by allowing each party to argue its position on Penabaz' motion for a departure sentence. Penabaz reiterated the mitigating factors presented in his motion with a particular emphasis on the impact that

jail would have on the treatment of his diabetes. He then asked that the district court sentence him to a minimum of 12.5 years instead of the 25-year minimum life sentence required by the statute.

Conversely, the State requested that the district court follow the law and the parties' plea agreement and impose the mandatory minimum sentence for each count, to be served concurrently. The State specifically asked the district court to note that Penabaz had diabetes for a long time, but his condition did not prevent him from abusing his victims. The State also disagreed with the psychological evaluation that Penabaz was not at risk for recidivism. The State asked the district court to note the age of the victims and that Penabaz took advantage of his relationships to the victims to abuse them. Finally, the State argued that Penabaz only pleaded guilty because he knew that the evidence against him was overwhelming, and he had no choice but to admit his guilt.

The district court heard impact statements from the mothers of both victims. Victim 2's mother recounted the impact that Penabaz' abuse had on her and her daughter and how Penabaz used his knowledge of the system to avoid getting caught. She asked the district court to impose a sentence that reflected the level of threat he posed to the community. Victim 1's mother stated that Penabaz' actions towards her daughter would take forever to mend and that the wounds he inflicted on her would not heal. She emphasized that because of Penabaz' actions, Victim 1 had to grow up too quickly and suffered great losses.

Both victims also addressed Penabaz and the district court. Victim 2 repeatedly emphasized how young she was at the time of the abuse and how scared and alone she felt. She described how she feared that Penabaz would also abuse her younger sister. Victim 2 directly addressed Penabaz to tell him that she hoped he would spend the rest of his life in prison. Victim 1 spoke last and began by listing the specific ways in which Penabaz' abuse continued to negatively impact her. She told Penabaz, "[Y]ou have

3

undeniably changed the course of my life. You've given me hurdles I had to jump since I was extremely young, hurdles no child should have ever been subjected to in the slightest. I will always carry what you did to me."

Finally, Penabaz spoke on his own behalf and began by saying that he had prepared a statement for the court, but after listening to the victims' impact statements, he did not even want a departure anymore. Penabaz stated,

> "I was going to ask for a departure because there's people in my life I wanted to be able to be there for, but truth be told, I feel like they're probably better off without me. So, I wish there was something I could say to ease the hurt and the pain that I caused you guys, but I know there's really no words for that."

He admitted that his victims would have been better off if he had been arrested earlier, but even if he spent the rest of his life in prison, he would try to be a better person and bring positivity to the lives of the people he impacted.

After hearing Penabaz' comments, the district court asked Penabaz' attorney if he wished to formally withdraw his motion for a departure sentence. His counsel responded that "in light of the circumstances and everything happened with relation to the motion, feelings and things, I don't know if my client can make a clear decision. So, it will be my decision that we proceed." The district court then denied Penabaz' motion for a departure sentence and sentenced him to two concurrent life sentences with eligibility for parole after 25 years.

Penabaz timely appeals.

4

## DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING PENABAZ' REQUEST FOR A SENTENCING DEPARTURE?

Penabaz contends that the district court abused its discretion by denying his request for a departure sentence. He claims that the district court's decision not to depart was unreasonable given his minimal criminal history, that he pleaded guilty to the offense, his low risk of reoffending, his serious medical needs, and that he was a victim of abuse and in need of mental health treatment. According to Penabaz, these factors, whether taken individually or as a whole, presented substantial and compelling reasons to warrant a departure to the sentencing grid. He asks that we vacate his sentence and remand to the district court for resentencing.

### Standard of Review

K.S.A. 21-6627, informally known as Jessica's Law, requires mandatory minimum imprisonment of not less than 25 years for certain sexual offenses when an offender is 18 years old or older and the victim is under 14 years of age. K.S.A. 21-6627(a)(1). An appellate court will not reverse a sentencing court's denial of a departure under Jessica's Law unless the court abused its discretion in holding there was no substantial and compelling reason to depart. *State v. Powell*, 308 Kan. 895, 902, 425 P.3d 309 (2018). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Bilbrey*, 317 Kan. 57, 63, 523 P.3d 1078 (2023). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Keys*, 315 Kan. 690, 708, 510 P.3d 706 (2022).

### The District Court Appropriately Evaluated Penabaz' Request for a Departure

Convictions of crimes under K.S.A. 21-5503(a)(3) (rape) and K.S.A. 21-5506(b)(3) (aggravated indecent liberties with a child under 14 years of age) are subject

5

to sentencing under Jessica's Law. Such crimes are subject to a life sentence with a mandatory minimum 25-year term of imprisonment. K.S.A. 21-6627(a)(1)(B) and (C).

Jessica's Law, however, expressly authorizes and provides a procedure for imposing a departure sentence from the mandatory minimum sentence. See K.S.A. 21-6627(d)(1). If it is the offender's first Jessica's Law conviction, the district court may depart from the mandatory minimum and impose a sentence under the Kansas Sentencing Guidelines Act if, "following a review of mitigating circumstances," the court finds substantial and compelling reasons to do so. K.S.A. 21-6627(d)(1); *Powell*, 308 Kan. at 902. Mitigating circumstances the district court may consider include, but are not limited to (A) the defendant's criminal history, (B) the defendant was mentally or emotionally disturbed at the time of the crime, (C) the victim was an accomplice in the crime committed by another person, and the defendant's participation was minor, (D) whether the defendant acted under extreme distress or under the substantial control of another person, (E) if the defendant could not appreciate the criminality of their conduct or conform it to the requirements of the law, and (F) the defendant's age at the time of the crime. K.S.A. 21-6627(d)(2).

When considering a motion to depart in a Jessica's Law case, the district court must first review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then the district court determines, based upon all the facts of the case, whether the mitigating circumstances rise to the level of "'substantial and compelling reasons'" to depart from the mandatory minimum sentence. *Powell*, 308 Kan. at 913-14 (quoting *State v. Jolly*, 301 Kan. 313, 324, 342 P.3d 935 [2015]). Substantial reasons are those that are "'real, not imagined; something with substance and not ephemeral,'" while compelling reasons are those that force the court to "'leave the status quo or go beyond the ordinary.'" 301 Kan. at 323.

But a district court need not affirmatively articulate that it refrained from weighing mitigating and aggravating circumstances. *Powell*, 308 Kan. at 908. When a district court considers departure pleadings, listens to the arguments of counsel, and considers victim statements, the court has performed its obligations to evaluate a request for a departure. *State v. Plotner*, 290 Kan. 774, 780-81, 235 P.3d 417 (2010). Furthermore, when a district court properly considers all the mitigating factors proposed by a criminal defendant and weighs them against the facts, an appellate court should not find that the district court abused its discretion. *State v. Grable*, 314 Kan. 337, 345, 498 P.3d 737 (2021).

Here, the district court did not act unreasonably by sentencing Penabaz to presumptive life sentences. Instead, it properly analyzed the mitigating factors that Penabaz proposed to support his request for a departure under the framework developed in *Jolly*. The district court began its review of Penabaz' motion for a departure by noting how impactful the victims' statements were and then acknowledged that under certain circumstances, substantial and compelling reasons would permit it to reduce Penabaz' sentence by half.

The district court then proceeded to articulate its evaluation of each of the mitigating factors Penabaz proposed as justification for a departure. It noted that although this was Penabaz' first conviction for a crime of this nature, the Legislature likely did not mean for this type of mitigating circumstance to apply to a defendant who had committed multiple instances of abuse against multiple victims. The district court also noted that Penabaz had been confronted with these allegations more than 10 years earlier and had denied them. Based on these facts, the district court did not find Penabaz' minimal criminal history to be a substantial and compelling reason to depart.

The district court then expressed sympathy that Penabaz suffered from diabetes but noted that his condition was not a substantial and compelling reason to depart.

7

Similarly, the district court commented that Penabaz' depression and substance abuse disorder did not create an extreme mental or emotional disturbance that was sufficient to grant a departure. The district court also discounted Penabaz' psychological evaluation, finding that because his behavior and predatory actions toward children occurred over the course of so many years and happened to so many children, it defied both logic and common sense to find no risk of recidivism. The court instead found that public safety would be better served if Penabaz was imprisoned.

The district court thanked Penabaz for his comments and for acknowledging what the victims had to say and observed that he accepted a plea agreement instead of taking the case to trial. But the district court ultimately concluded that there were no substantial and compelling reasons to order a departure sentence and further, that it was having a hard enough time following the plea agreement to sentence Penabaz to concurrent, instead of consecutive, terms. Because Penabaz did not present any substantial and compelling reasons to depart to the sentencing grid, the district court denied his motion for a durational departure and proceeded with ordering the presumptive life sentences.

The record reflects that the district court performed the appropriate two-step analysis when it considered each of the mitigating factors raised by Penabaz to support his motion for a departure. And Penabaz has not met his burden to establish that no reasonable person would have reached the same conclusion as the district court. Because the district court did not act unreasonably by ruling that no substantial and compelling reasons existed to depart to the sentencing grid, we affirm Penabaz' sentences.

Furthermore, caselaw supports each of the district court's individual conclusions on each of the proposed mitigating factors. Regarding Penabaz' argument that he had a minimal criminal history, the district court correctly noted that the record supported that Penabaz was a serial child abuser. And proof of prior convictions was not required when the district court considered his criminal history if substantial competent evidence

8

supported that Penabaz had previously engaged in criminal activity. See *State v. Theurer*, 50 Kan. App. 2d 1203, 1227-28, 337 P.3d 725 (2014).

This court also found in *Theurer* that when a defendant fails to present evidence regarding how a defendant's ability to receive treatment for diabetes would be severely impacted by a prison sentence, there is no basis for the diagnosis to serve as a substantial and compelling reason to depart. 50 Kan. App. 2d at 1225-26. Here, because Penabaz did not provide specific evidence regarding how prison would affect his own diabetes treatment, the district court did not act unreasonably by finding that his diagnosis did not support a departure sentence.

For similar reasons, the district court's evaluation of Penabaz' mental health issues was not unreasonable. Penabaz did not provide any evidence that his prior abuse, depression, or substance abuse was so severe that it limited his ability to understand right from wrong or that his actions violated the law. See *Grable*, 314 Kan. at 343-46 (finding the defendant's medical and psychiatric issues at the time of the crime were not a substantial and compelling reason to depart when balanced against the attacks against multiple victims). And finally, when there is overwhelming evidence of a defendant's guilt, as there was in this case, the defendant's decision to accept responsibility is not a substantial and compelling reason to warrant a departure. 314 Kan. at 345. Thus, because the district court's decision to deny Penabaz' departure was reasonable, it did not abuse its discretion.

*Conclusion*

Even if reasonable minds could differ on whether Penabaz' mitigating circumstances were substantial and compelling reasons to justify a departure, the district court's actions were not unreasonable. It followed the appropriate legal framework when it evaluated Penabaz' proposed mitigating circumstances and determined that he was not

9

entitled to a departure from the presumptive life sentence for each count. Because Penabaz cannot meet his burden to show that the district court's actions were unreasonable, the district court did not abuse its discretion.

Affirmed.